SCHOTT, Judge.
This is a tort action by a physician against a hospital. He alleges that he injured his back while assisting a team of surgical personnel in the transfer of a patient from the operating room table to a portable recovery room table. A jury returned a verdict in plaintiff’s favor on the basis of interrogatories the court submitted. In this appeal by the hospital the principal issue is whether it owed any duty to protect plaintiff from the risk he encountered.
Plaintiff is a surgeon. On the day of the accident he performed an operation at St. *489 Claude General Hospital for the removal of his patient’s gall bladder. Following the operation the patient had to be transferred from the operating table to a portable table or stretcher on which she would be rolled to the recovery room. Six persons worked together in making the transfer, three female nurses, a male anesthetist, plaintiff, and his assistant, a male physician. The procedure entailed pulling the patient away from the stretcher, the insertion of a roller under her, pushing the patient onto the roller, and rolling the patient onto the stretcher. The patient was short in stature and weighed over two hundred pounds. Plaintiff testified that he hurt his back while lifting and pushing the patient.
Plaintiff alleged that the hospital was negligent in failing to provide him with sufficient personnel to assist him. Plaintiff testified that the patient’s size required six people to move her and since the hospital provided no orderlies or other personnel to assist the three nurses and the anesthetist it was necessary for him to participate along with the assistant surgeon. Asked whether it was normally the physician’s job to move a patient, he replied:
Well, at St. Claude there is no male attendant who helps to move the patients, but at other hospitals where I worked, at Methodist and New Orleans General, and even at Flint Goodridge when they were operating, had two orderlies, so it is very unusual for us to have to help move the patient except at St. Claude General.
However, on cross examination, he testified as follows:
Q. You could have refused to move Mimi Sykes if you wanted, couldn’t you?
A. Sure. I could have.
Q. Because, also, if you didn’t think you should have handled the job then you should have gotten someone else to move Mrs. Sykes; is that correct? A. I didn’t think I was in any danger. Q. If you thought you could have gotten someone else to do it?
A. I could have refused if I thought there was a problem.
Four of six other physicians who testified at the trial stated that it was the common practice for the surgeon to help move the patient after he operated. Dr. Epps, plaintiff’s neurosurgeon stated that he has done it at Methodist Hospital including the time when he operated on plaintiff. Dr. Me Kenna, an orthopedic surgeon with twenty-one years of experience, called by plaintiff, stated he has been taking patients off the operating table “as long as I can remember.” Dr. Whitecloud, plaintiff’s orthopedic surgeon, testified he has operated at Tulane Medical Center, Charity Hospital, VA Hospital, Children’s Hospital and Touro Infirmary and has regularly assisted in transferring patients after operations including the time when he operated on plaintiff. Dr. Cracco, another orthopedic surgeon who treated plaintiff, and who performs surgery most often at Methodist Hospital and Chalmette General, stated that he commonly assists in moving patients from the operating table.
In order to determine whether defendant is liable to plaintiff we employ a duty-risk analysis which includes these inquiries: 1) Was the conduct complained of a cause-in-fact of the harm? 2) Was there a duty imposed on defendant to protect against the risk involved? 3) Was there a breach of that duty? Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984).
On the question of cause-in-fact the conduct complained of was the failure of the hospital to provide orderlies or other personnel to move the patient and to make it unnecessary for plaintiff to help. The jury found that defendant’s negligence was a proximate cause of plaintiff’s injury along with plaintiff’s negligence which constituted ten per cent of the total fault. Because such a finding is not manifestly erroneous we conclude that the conduct complained of was a cause-im-fact of the harm.
The next question is whether there was a duty owed to plaintiff by defendant which protected against the risk involved. Plaintiff’s evidence showed that under his arrangement with the hospital he came to the operating room with his skill and expertise; *490 the hospital was to supply everything else, including space, equipment, tools, and personnel. As we read plaintiffs testimony he was strictly a volunteer under no obligation to help with the patient, but the jury must have inferred from the testimony that the circumstances demanded the prompt removal of the patient and the absence of sufficient hospital personnel required plaintiff to participate for the welfare and safety of his patient. Undoubtedly, the hospital’s duty to provide adequate personnel was designed to safeguard the patient during the operation, but the question here is whether it is designed to guard against the remote possibility of the surgeon suffering a back injury while moving the patient after the operation.
Actionable negligence results from the creation of an unreasonable risk of injury to others. Mills v. Ganucheau, 416 So.2d 361 (La.App. 4th Cir.1982). The duty, to be actionable must involve acts or omissions which engender an unreasonable risk of harm to others. Eldridge v. Downtowner Hotel, 492 So.2d 64, (La.App. 4th Cir.1986). In determining whether the risk is unreasonable, not only the seriousness of the harm that may be caused is relevant, but also the likelihood that harm may be caused. Guilbeau v. Liberty Mutual Ins. Co., 338 So.2d 600 (La.1976).
The evidence indicates that it was the common practice for the operating surgeon to assist in the removal of the patient and while customary practices are relevant in determining negligence they are not conclusive or controlling in the judicial determination of whether unreasonable risk has resulted from the conduct in question. Nevertheless, the evidence indicates that the chances of an injury like plaintiffs were remote. In fact plaintiff himself stated he did not think he was in any danger. The slight likelihood of such an injury resulting from the failure of the hospital to supply sufficient personnel to move patients and make it unnecessary for physicians to help supports the conclusion that the hospital was not negligent. Guilbeau v. Liberty Mut. Ins. Co., supra.
Some risks are reasonable and the individual encountering such risks bears the responsibility of dealing with and/or avoiding them. Here the risk was injury to the plaintiff's back as he lifted and pushed this heavy patient. This was an obvious and reasonable risk which the defendant had no duty to protect against. Eldridge v. Downtowner Hotel, supra.
In one of the early landmark cases on duty risk, Hill v. Lundin & Associates, 260 La. 542, 256 So.2d 620 (La.1972) the court adopted the following from Malone, Ruminations on Cause-In-Fact, 9 Stanford L.Rev. 60, 73 (1956):
All rules of conduct, irrespective of whether they are the product of a legislature or a part of the fabric of the court-made law of negligence, exist for purposes. They are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises. How appropriate is the rule to the facts of this controversy? This is a question that the court cannot escape.”
In the application of these principles to the facts of this case we conclude that the defendant had no duty to protect plaintiff against the risk of injuring his back considering the circumstances. The jury’s conclusion to the contrary was an error of law.
In Allen v. Housing Authority of New Orleans, 423 So.2d 1291 (La.App. 4th Cir. 1983) this court, having found that the defendant landowner owed a duty to plaintiff and breached it, framed the next question: “Was the risk, and harm caused, within the scope of protection afforded by the duty breached?” We have concluded that, as a matter of law, the risk that plaintiff would injure his back while removing the patient was not within the scope of protection afforded by the hospital’s alleged duty to *491 have adequate personnel available when the operation was performed.
Plaintiff cites four cases to support the argument that duties have been found to be owed to person in situations far more remote than the contractual relationships between staff physicians and hospitals. In the latest of these cases, Foster v. Lafayette Ins. Co., 504 So.2d 82 (La.App. 2d Cir.1987) the court found that the driver of a truck breached a duty to a plaintiff motorist who was injured by an object thrown from the truck by a passenger under circumstances where the driver knew objects were being thrown and had made stops so that his passengers could pick up such items. In this situation the risk to the plaintiff was clearly within the scope of the driver’s duty not to allow and participate in this object-throwing lark.
In the next most recent case relied upon by plaintiff, Snyder v. Bergeron, 501 So.2d 291 (La.App. 1st Cir.1987) writ denied 503 So.2d 483, the court considered the question of whether a licensed driver who allowed an unlicensed fourteen-year-old to drive should be liable for the death of the child killed due to his own negligence. In determining whether the scope of the duty of the licensed driver not to permit the unlicensed driver to drive extends to protect the minor driver from his own incompetency the court found that it should consider “among the policy considerations” the severity of the harm, the likelihood of the harm, the forseeability of risk, and the ease of association between the duty and the risk. The court concluded under those facts that the risk encountered was within the scope of the duty breached. In the present case the only consideration favorable to plaintiff is the severity of the harm. On the other hand the harm was not likely, the risk was not forseeable, and there was no ease of association between plaintiff’s back injury and the hospital’s duty to supply adequate personnel.
In Vicknair v. Hibernia Bldg. Corp., 479 So.2d 904 (La.1985), the duty breached was for the building to insure that no fire alarm wires would be broken by workmen it employed. The plaintiff who was a pregnant woman experienced emotional distress and premature delivery after being forced in response to the fire alarm to descend twenty-one flights of stairs. The evidence showed that the fire system was set up so that upon the sounding of the alarm instructions were given over the public address system telling occupants to evacuate by way of the stairs. The court found that the risk of plaintiff’s injuries was within the scope of the duty owed. This case is clearly distinguishable.
Finally, plaintiff relies on Brock v. New Orleans Public Service, Inc., 433 So.2d 1083 (La.App. 4th Cir.1983) in which the court found that the risk of a roofer making contact with defendant’s high voltage lines with a section of metal guttering he was carrying was within the scope of defendant’s duty to relocate or insulate its wires. The court found that the proximity of the roof to the wires and the likelihood that the roof would have to be maintained were circumstances that brought the risk within the ambit of the duty breached. Here again the case is clearly distinguishable on its facts.
Finally, plaintiff argues that' there is an ease of association between the risk of his injury and the hospital’s duty to provide adequate personnel. He likens the case to the Brock and Vieknair cases in which the courts determined liability based upon such ease of association between risk and duty. In Vieknair, the pregnant lady’s injury was the direct result of her response to the fire alarm which in turn was activated because of defendant’s breach of duty. In Brock, the roofer’s electrocution was the direct result of defendant’s wires being too close to the roof and uninsulated. Plaintiff’s back injury was only remotely associated with defendant’s lack of personnel.
Accordingly, the judgment appealed from is reversed and set aside and plaintiff’s suit is dismissed at his cost.
REVERSED AND RENDERED.
CIACCIO, J., concurs.