**Sande L. WRIGHT, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. S–4245.**

Supreme Court of Alaska.

Jan. 24, 1992.

C.R. Kennelly, Stepovich, Kennelly & Stepovich, P.C., Anchorage, for appellant.

Kevin M. Saxby, Asst. Atty. Gen., Anchorage and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

Sande L. Wright appeals the dismissal of his lender liability claims against the State of Alaska (state) arising out of his participation in the Point MacKenzie Agricultural Project. On summary judgment the superior court concluded that Wright's claims were barred by the doctrines of equitable and quasi estoppel, because he failed to disclose his claims during his bankruptcy proceeding. The superior court concluded also that Wright's tort-based misrepresentation claims were barred by AS 09.50.-250(3). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Wright operated a dairy farm in the Point MacKenzie area. He had purchased the parcel in 1984 from one of the winners of the Point MacKenzie Agricultural Project lottery.[1] In order to develop the farm, Wright borrowed almost a million dollars from the Alaska Agricultural Revolving Loan Fund (ARLF), a state agency within the Department of Natural Resources (DNR).

---

1. The Point MacKenzie lottery occurred in 1982. The objectives of the lottery were to stimulate in-state milk production, to provide milk to Alaska consumers at a competitive market price, and to assist in gaining agricultural self-sufficiency for the state. The state sold the agricultural interest (i.e. the right to use the land for agricultural purposes) in twenty-nine parcels totaling 13,940 acres in the vicinity of Point MacKenzie.

For a variety of economic reasons, Wright was unable to meet his debt obligations. In August 1987 the state sued Wright in state court to collect his defaulted loans. Shortly thereafter, Wright filed a Chapter 11 bankruptcy petition in federal court. Pursuant to 11 U.S.C. § 362(a), Wright's petition automatically stayed the state's collection proceedings. Wright was unable to work out a reorganization plan with the state and other creditors. Following a hearing on May 26, 1988, the bankruptcy court granted the state's motion for relief from automatic stay. 11 U.S.C. § 362(d). Eventually Wright's Chapter 11 reorganization was converted to a Chapter 7 liquidation. Wright cooperated in the state's efforts to locate and repossess cattle, equipment and other chattels that secured some of the state's loans. On March 31, 1989, the bankruptcy court discharged Wright's debts.

Wright filed the lender liability suit, which is the subject of this appeal, on May 20, 1988, during the pendency of the bankruptcy proceeding. He alleged that the state: (1) misrepresented the economic viability of the Point MacKenzie project and the opportunity to consolidate parcels; (2) negligently promoted and managed the project; (3) breached its fiduciary duty and its duties of good faith and fair dealing; and (4) failed to comply with the requirements of the Alaska Administrative Procedure Act (AAPA) in operating the ARLF program and managing the assets of the Matanuska Maid Creamery. Based on these theories, Wright requested cancellation of his indebtedness to the state, an injunction prohibiting the state's collection efforts, rescission of his contractual obligations to the state, and monetary damages. Wright's claim was consolidated with several other cases filed by other participants in the Point MacKenzie project.

The state filed a motion for summary judgment following its relief from the automatic stay. The superior court entered judgment in the state's favor, concluding that Wright's bankruptcy position barred his suit against the state under the doctrines of quasi and equitable estoppel. The superior court also addressed alternative grounds advocated by the state to support summary judgment in its favor, ruling that Wright's tort-based misrepresentation claims were barred by state immunity pursuant to AS 09.50.250(3). The court rejected the state's arguments that the negligence and breach of fiduciary duty and bad faith claims were barred by discretionary function immunity and that Wright's AAPA claims were time-barred or subject to discretionary function immunity.[2]

Final judgment was entered against Wright dismissing all of his claims with prejudice. Wright appeals.

## II. STANDARD OF REVIEW

■ When reviewing a grant of summary judgment, the court must determine whether any genuine issue of material fact exists and whether the moving party is entitled to judgment on the law applicable to the established facts. *Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985). All reasonable inferences of fact from proffered materials must be drawn against the moving party and in favor of the non-moving party. *Id.*

■ This court is not bound by the reasoning articulated by the trial court and can affirm a grant of summary judgment on alternative grounds. *Moore v. State*, 553 P.2d 8, 21 (Alaska 1976). Moreover, this court should consider any matter appearing in the record, even if not passed upon by the lower court, in defense of the judgment. *State v. Pete*, 420 P.2d 338, 341 (Alaska 1966); *Ransom v. Haner*, 362 P.2d 282, 285 (Alaska 1961).

## III. DISCUSSION

THE SUPERIOR COURT DID NOT ERR IN BARRING WRIGHT'S CLAIMS UNDER THE DOCTRINE OF QUASI ESTOPPEL.

The state argues that Wright's lender liability claims against it are inconsistent with his failure to contest his obligation to

---

**2.** The parties do not address these latter issues in their appellate briefs.

the state during his bankruptcy proceedings. Like the superior court, the state relies on *Oneida Motor Freight v. United Jersey Bank,* 848 F.2d 414, 416–20 (3rd Cir.1988) (debtor's failure to disclose possible claims against bank for its alleged breach of loan agreement during pendency of Chapter 11 bankruptcy proceedings equitably and judicially estopped debtor from later prosecuting claims in non-bankruptcy forum).

Wright emphasizes that the application of the doctrine of quasi estoppel rests on findings of fact, citing *Jamison v. Consolidated Utilities, Inc.,* 576 P.2d 97, 102 (Alaska 1978). Contrary to the state's assertions, Wright contends that he did inform the state of his lender liability claims during the bankruptcy proceedings. He argues that the state failed to show that his lender liability suit is unconscionable in light of his position during bankruptcy. According to Wright, at best the state has only demonstrated that material facts are in dispute as to the assertion of an inconsistent position and therefore summary judgment is inappropriate.

Wright also argues that the state failed to conclusively establish detrimental reliance, a necessary element of equitable estoppel. He asserts that he told the state that he would bring a civil action against the state if he was unable to reorganize his debts. According to Wright, he simply did what he told the state he would do after the state rejected all reorganization efforts. Wright argues that the state cannot claim detrimental reliance because it did not compromise in the bankruptcy proceeding. He concedes that had the state agreed to settle all claims and approve a reorganization plan and then he had filed this action, detrimental reliance could possibly be found.

■ Alaska recognizes two separate estoppel doctrines. The elements of equitable estoppel are "the assertion of a position by conduct or word, reasonable reliance thereon by another party, and resulting prejudice." *Jamison,* 576 P.2d at 102. Neither ignorance nor reliance, however, are essential elements of quasi estoppel. *Dressel v. Weeks,* 779 P.2d 324, 331

(Alaska 1989). Quasi estoppel appeals to the conscience of the court and applies where "the existence of facts and circumstances mak[es] the assertion of an inconsistent position unconscionable." *Jamison,* 576 P.2d at 102. This court has instructed trial courts to consider the following factors in determining whether the doctrine of quasi estoppel is applicable: "whether the party asserting the inconsistent position has gained an advantage or produced some disadvantage through the first position; whether the inconsistency was of such significance as to make the present assertion unconscionable; and, whether the first assertion was based on full knowledge of the facts." *Id.* at 103.

■ In our view, quasi estoppel was properly applied because Wright's lawsuit is not consistent with his bankruptcy position. In his affidavit, Wright states that he raised the lender liability issues during the bankruptcy proceedings. According to Wright, the bankruptcy judge was unwilling to address these issues. Wright attests that he attempted to settle with the state and filed suit when these efforts failed. Since this is a review of summary judgment, we must accept Wright's version of the facts. However, these are not material facts that preclude entry of summary judgment.

In his initial bankruptcy petition Wright did not schedule any claims against the state or any set off or counterclaims against the state's claims. However, he did amend his schedules before his discharge in bankruptcy and filed suit against the state before its own motion for relief from the automatic stay was granted. Indeed he repeatedly asserted that unless he and the state and other creditors reached a mutually acceptable reorganization plan in the Chapter 11 bankruptcy, he would pursue his lender liability claims. The parties did not reach a mutually acceptable plan, and the Chapter 11 proceeding was converted to a Chapter 7 liquidation. Just as he had threatened, Wright pursued his lender liability claims. However, accepting

these operative facts as true does not dispose of the quasi estoppel defense.

The state claims that Wright's cooperation in the recovery of bankruptcy estate assets is not consistent with his later pursuit of his lender liability claim. We are unwilling to hold that a cooperative debtor is to be penalized for such conduct. That argument aside, the fact remains that while Wright successfully discharged the bulk of his debt to the state and other creditors in the bankruptcy proceeding, he retained the apparent right to pursue damages against the state in state court, immune from state recourse against him. Material consequences flow from that result.

Wright's lender liability claims against the state are inextricably interwoven with the state's borrower liability claims against Wright. When the state sued Wright to collect on the defaulted loans, Wright responded by filing a Chapter 11 bankruptcy proceeding. But for that petition, Wright would have been required to file his lender liability claims against the state as compulsory counterclaims in the state court proceeding. Civil Rule 13(a). Failure to do so would have precluded Wright from later pursuing those claims in another proceeding. Wright effectively circumvented compulsory joinder requirements, and the orderly resolution of all claims arising out of the same transaction or occurrence, by his resort to the bankruptcy proceeding and failure thereafter to pursue his lender liability claims within the context of the bankruptcy proceeding.

The state asserts, and Wright does not dispute, that it relied on his bankruptcy position when it pursued non-judicial foreclosure of collateral, thereby giving up its right to seek a deficiency judgment for any balance due, even *if* it had been able to do so notwithstanding the bankruptcy discharge. Whether the state could have done so is problematic. Furthermore, despite Wright's pursuit of monetary relief,

the state's ability to offset or recoup its own damages against any recovery Wright might obtain is also problematic. Additionally, as the state points out, other creditors in the bankruptcy proceeding have had their claims against Wright discharged. They now may be unable to recover against Wright should he recover against the state on his lender liability claims, which would have accrued to their benefit had those claims been pursued in the bankruptcy proceeding.[3]

Wright makes no claim that his delay in filing his lender liability claims was due to any lack of knowledge on his part. He asserts that lack of funds made it impossible for him to pursue those claims until after the bankruptcy proceeding had been initiated.

We conclude that Wright's conduct falls within the ambit of unconscionable inconsistency articulated in *Jamison*. Wright could have pursued his lender liability claims as compulsory counterclaims when the state sought to collect his defaulted loans. Having filed bankruptcy, Wright should have scheduled his lender liability claims both affirmatively and defensively in his petition, thereby putting the state (and other creditors) on notice of those claims. *Oneida Motor Freight*, 848 F.2d at 416. The claims could then have been pursued within the context of the bankruptcy proceeding. When the state obtained relief from the automatic stay in the bankruptcy proceeding *after* Wright had filed his lender liability suit, Wright could have sought permission from the bankruptcy court to pursue that suit in the state court proceedings, either as a compulsory counterclaim or through joinder of his lender liability suit with the state's collection proceeding. Wright did none of these, the results of which are plain from the record as noted.

The judgment of the superior court is

---

**3.** A long-standing tenet of bankruptcy law requires one seeking benefits under its terms to satisfy a companion duty to schedule, for the benefit of creditors, all his interests and property rights. *In Re Hannan*, 127 F.2d 894 (7th Cir.1942).

AFFIRMED.[4]

*Oneida Motor Freight,* 848 F.2d at 416.

4. In view of our disposition of the quasi estoppel issue, we find it unnecessary to address other issues raised by the parties or decided by the superior court.