Jerry MADDOX, Appellant,

v.

RIVER & SEA MARINE, INC., Appellee.

No. S–6582.

Supreme Court of Alaska.

Nov. 8, 1996.

Michael W. Flanigan, Walther & Flanigan, Anchorage, for Appellant.

Michael D. Corey, Sandberg, Smith, Wuestenfeld & Corey, Anchorage, for Appellee.

Before COMPTON, C.J., RABINOWITZ, MATTHEWS and EASTAUGH, JJ., and CARPENETI, J. Pro Tem.*

## OPINION

CARPENETI, Justice Pro Tem.

## I. INTRODUCTION

This is an appeal from a superior court decision granting summary judgment to defendant River and Sea Marine, Inc. (River and Sea), and dismissing the negligence claim of plaintiff Jerry Maddox (Maddox). The case involves the scope of a seller's duty to warn the purchaser of, or make safe, a chattel dangerous for its intended use. The dispute arose when Maddox injured his back while attempting to detach from his truck a boat and trailer purchased from River and Sea. Because we find that material issues of fact are in dispute concerning the defendant's duty, we reverse the superior court's grant of summary judgment and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

Maddox purchased a used power boat and trailer from River and Sea on August 29, 1990, in Kenai. River and Sea is a retail seller of boats, motors, trailers, snowmachines, and all-terrain vehicles. Maddox had owned three power boats and trailers before purchasing this boat from River and Sea, and had worked as a boat salesman. The boat and trailer had been leased for two years to another customer. The boat and trailer, made by different companies, were paired by River and Sea. When Maddox purchased the boat, it was still in the possession of the prior lessee. The trailer had been left at River and Sea. Maddox attached the empty trailer to his truck at River and Sea, then

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

retrieved the boat from its location on the river.[1]

Several days later, Maddox decided to detach the boat and trailer from his truck. When he attempted to do so, he found that the tongue-jack supplied with the trailer was broken.[2] He then attempted to remove the trailer from his truck by hand. In the process he injured his back, allegedly due to the excessive weight of the boat-trailer combination.

Maddox testified at his deposition that he first attempted to lift the boat at the trailer hitch but "[i]t wouldn't come off, so I got back in the truck, put the truck in reverse, [and] hit the gas sharply" in order to break loose the trailer clamp. He returned to the trailer and then attempted to lift the boat with his back under the bow, five to six feet from the end of the trailer's tongue. Maddox submitted the affidavit of Robert Kintzele (Kintzele), a legal investigator hired by Maddox who stated that he had examined the boat-trailer combination and that the tongue-weight as the combination was configured at the time of the injury was 394 pounds.[3]

After the injury, Maddox took the trailer back to River and Sea and requested that they reduce the tongue-weight. They did so, apparently by relocating the axle of the trailer. According to the Kintzele affidavit, after this adjustment the tongue-weight was 285 pounds.

Maddox filed suit against River and Sea, claiming that his injury was a result of River and Sea's negligence in selling him an improperly matched boat and trailer and a broken tongue-jack. Maddox alleged that the boat and trailer were incorrectly paired, resulting in an excessive tongue-weight. Therefore, Maddox contended, the weight of the boat-trailer combination and the broken tongue-jack constituted a dangerous condition rendering River and Sea liable in light of its failure to warn him of it.[4]

River and Sea moved for summary judgment, arguing that it had no duty to provide Maddox with a boat-trailer combination that could be raised by hand, that if such a duty was owed it was not breached, and if the duty was both owed and breached Maddox's injuries were not caused by the breach. After briefing and argument, the superior court granted River and Sea's motion for summary judgment, stating: "while the court is not saying the defendant is free from any duty with respect to the plaintiff, as the plaintiff has described the duty for which the defendant should be held liable, the court can find none." Maddox appeals.

### III. DISCUSSION

In review of summary judgment, we must determine whether there are any genuine issues of material fact, and whether the moving party was entitled to judgment as a matter of law. "The court must draw all reasonable inferences in favor of the non-moving party and against the movant." *Swenson Trucking & Excavating, Inc. v. Truckweld Equip. Co.*, 604 P.2d 1113, 1116 (Alaska 1980).

As a general rule, issues of negligence such as those presented by this case are not susceptible to summary judgment due to the highly circumstantial judgments required in their determination, but should be resolved by trial in the ordinary manner. *Webb v. City & Borough of Sitka*, 561 P.2d 731, 735 (Alaska 1977). As we noted in that case, the reason for this rule is

> because of the elusive nature of the concept of negligence, the determination of the existence of which requires the forming of a judgment as to the reasonableness of the conduct of the parties in the light of all the circumstances of the case. If rea-

---

1. Because the boat was in the water, Maddox was not required to lift the boat and trailer combination at this time.

2. The "tongue" of the trailer is that portion that extends forward to attach to the towing vehicle. A tongue-jack is a device that raises the tongue in order to attach or detach the trailer.

3. The term "tongue-weight" refers to the amount of force required to raise the trailer at the end of the tongue.

4. Maddox does not claim that River and Sea is liable in strict product liability, or breach of express or implied warranty.

sonable minds could draw different inferences and reach different conclusions from the facts the issue must be reserved for trial.

*Id.*, (quoting *Gross v. Southern Ry. Co.*, 414 F.2d 292, 297 (5th Cir.1969) (citations omitted)).[5]

### A. Scope of Seller's Duty to Warn Purchaser of, or Make Safe, Products Dangerous for Their Intended Use

The superior court concluded that River and Sea did not owe Maddox a duty with regard to the configuration of the boat-trailer combination. Specifically, the trial court found that River and Sea did not have a duty to configure the boat-trailer combination in such a way that it could be detached manually. With due respect to the trial court, we see the issue as being different: It is whether River and Sea owed Maddox a duty to configure the boat-trailer combination properly or to warn him that it was not so configured.

■■■ The concept of "duty" in negligence encompasses a broad range of policy considerations underlying the determination when, and to what extent, an individual should bear the costs of a given activity. *See Busby v. Municipality of Anchorage*, 741 P.2d 230, 233 (Alaska 1987) (listing factors relevant to analysis). Courts have long recognized that a seller must shoulder some responsibility for the costs imposed by defective or dangerous products. *Prince v. Parachutes, Inc.*, 685 P.2d 83, 87 (Alaska 1984); *see also MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050, 1053 (1916) (duty of manufacturer).

The outcome of this case turns upon the scope of a seller's duty to protect the customer from hazards potentially posed by the

seller's product. According to the *Restatement (Second) of Torts*

[o]ne who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*Restatement (Second) of Torts* § 388 (1965).[6] While we have not explicitly adopted Section 388, we have referred to it. *Saddler v. Alaska Marine Lines, Inc.*, 856 P.2d 784, 788 (Alaska 1993). Prior cases have recognized a duty to warn, breach of which may result in strict liability. *Prince*, 685 P.2d at 87; *Patricia R. v. Sullivan*, 631 P.2d 91, 102 (Alaska 1981).

River and Sea suggests that it had no duty to Maddox, under Section 388 or otherwise, to protect him from the weight of the boat-trailer combination because: (1) it was not foreseeable that he would attempt to detach the trailer by hand; and (2) the danger posed by the weight was obvious.

### B. Foreseeability of Detaching Trailer by Hand

■■ Under the *Restatement*, and under general negligence principles, the ambit of one's duty does not extend beyond foresee-

---

5. River and Sea argues that issues of duty are not "issues of negligence," and therefore that the preference for trial determination does not apply here. This court has previously applied the general rule against summary judgment in cases determining whether a duty exists. *See, e.g., Saddler v. Alaska Marine Lines, Inc.*, 856 P.2d 784, 787 (Alaska 1993). The same circumstantial judgments are required in such cases as in other negligence cases.

6. Maddox cites *Restatement* § 392 in his opening brief. Section 392 "states the rule under which a peculiar liability is imposed upon one supplying chattels for another's use because of the fact that the use is one in which the supplier has a business interest." *Restatement (Second) of Torts* § 392 cmt. a (1965). As the chattel in this case was not supplied for any use in which River and Sea had a business interest, the general rule stated in Section 388 applies.

able consequences. *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99, 101 (1928) ("If the harm was not willful [one who seeks redress at law] must show that the act as to him had possibilities of danger so many and apparent as to entitle him to be protected against the doing of it."). Comment (e) to Section 388 states:

> [O]ne who lends a chattel to another to be put to a particular use for which, though defective, it is safe, is not required to give warning of the defect, although he knows of its existence and knows that it makes the chattel dangerous for other uses, *unless he has reason to expect such other uses.*

*Restatement (Second) of Torts* § 388 cmt. e (1965) (emphasis added). *See also* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 96, at 687 (5th ed. 1984); *Division of Corrections v. Neakok,* 721 P.2d 1121, 1125 (Alaska 1986) ("The most important single criterion for imposing a duty of care is foreseeability."). This doctrine reflects a basic understanding that it is both inequitable and inefficient to hold a person liable for risks of which he or she is unaware.

### 1. *Propriety of summary judgment on foreseeability*

■ We conclude that Maddox satisfied his burden by presenting evidence sufficient to create a genuine dispute regarding the foreseeability of detaching the trailer by hand. Therefore summary judgment should not have been granted on this basis.

River and Sea supported its motion with the deposition of Peter Thomson (Thomson), the majority shareholder and president of River and Sea. Thomson testified that the primary safety concern in balancing boat-trailer combinations is creating enough weight at the tongue to firmly attach the trailer to the towing vehicle. He further stated that given the wide variations in the design and weight of boats, boat-trailer combinations similar in size to Maddox's often could not be lifted by hand. Based on this evidence, River and Sea argued before the superior court that suppliers could not reasonably expect individuals to manually detach trailers and therefore could not be held

liable for injuries caused during such use of its product.

However, the record also contained evidence suggesting that it was foreseeable that the boat-trailer combination would be lifted by hand. Maddox offered the deposition of Robert Paulk (Paulk), a former River and Sea employee who stated that "it is well known that boat users are frequently in a position where they have to lift the tongue by hand due to tongue jack failure, which is common with excessive tongue weights such as these." Thomson admitted during his deposition that both he and the previous owner of the boat had lifted this boat-trailer combination by hand. He further testified that a permissible maximum tongue-weight was "[b]etween a hundred and 200 pounds," and that any more was "more awkward than is necessary." In addition, the tongue-jack provided with the trailer was defective. While River and Sea was not aware of this, a jury may well find that it should have been, as the trailer was in its possession when Maddox purchased it.

Drawing all reasonable inferences in favor of Maddox, this evidence creates a material dispute over the foreseeability of Maddox's attempt to lift the boat-trailer combination by hand. Therefore we hold that summary judgment could not be granted on this basis.

### C. *Obviousness of Danger Posed by Excessive Weight*

River and Sea also argues that the danger posed by the weight of the boat-trailer combination was an obvious danger, for which it should not be held responsible.

### 1. *Absence of duty to warn of obvious dangers*

Courts appear universally to agree with the *Restatement* that a seller is not liable for injuries caused by an obviously dangerous product. *See, e.g., Mele v. Turner,* 106 Wash.2d 73, 720 P.2d 787, 790 (1986) (no liability arising from failure to warn of obvious danger); *Nichols v. Westfield Indus., Ltd.,* 380 N.W.2d 392, 400 (Iowa 1985) (supplier's duty is to warn of dangers which are not obvious with respect to use of the chattel in the condition in which it is supplied). As

Section 388(b) suggests, "[i]t is not necessary for the supplier to inform those for whose use the chattel is supplied of a condition which a mere casual looking over will disclose, unless the circumstances under which the chattel is supplied are such as to make it likely that even so casual an inspection will not be made." *Restatement (Second) of Torts* § 388 cmt. k (1965).

Judge (now Justice) Breyer in applying Maine law refused to impose liability for injury caused by an obviously dangerous condition. "[I]f the law required suppliers to warn of all obvious dangers inherent in a product, '[t]he list of foolish practices warned against would be so long, it would fill a volume.'" *Plante v. Hobart Corp.*, 771 F.2d 617, 620 (1st Cir.1985) (citation omitted). We have refused to impose strict liability based upon failure to warn of "hazards or dangers that would be readily recognized by the ordinary user of the product." *Prince*, 685 P.2d at 88. *See also* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 96, at 686–87 (5th ed. 1984).

These cases and the *Restatement* are based on the rationale that once aware of the danger posed by a hazardous item, the purchaser is in the best position to evaluate the risks of operation and to make the decision whether to assume or avoid those risks. Richard A. Epstein, *Modern Products Liability Law* 94–95 (1980). The provider of a good generally has superior information regarding the potential hazards posed by the good; the law presumes, however, that once in possession of this information the user of the good is in a better position to evaluate the risks and avoid accidents in connection with use.

The decision to place the risk of dangerous products upon a fully-informed user gains further support in the context of the particular injury at issue in this case. Given the wide range of individual sizes and strengths, the person lifting a weighty object is the best judge of his or her ability to lift it safely.[7] Not only is the risk of injury particularly "obvious" to the person lifting the object, it is extremely difficult for the seller to perceive. This fact does not relieve the seller, however, of the prior duty to inform the purchaser of the weight of the boat-trailer combination; that duty is relieved only if the purchaser may reasonably be expected to become aware of the weight before placing himself or herself in danger.

### 2. Propriety of summary judgment based on obviousness of danger

■ Summary judgment was appropriate, therefore, if there was no dispute from the evidence that River and Sea could reasonably have expected Maddox to be aware of the tongue-weight and the danger it posed without any warning from River and Sea. *See Andrulonis v. United States*, 924 F.2d 1210, 1222 (2d Cir.1991), *vacated*, 502 U.S. 801, 112 S.Ct. 39, 116 L.Ed.2d 18 (1991), *result reinstated*, 952 F.2d 652 (2d Cir.1991), *cert. denied*, 505 U.S. 1204, 112 S.Ct. 2992, 120 L.Ed.2d 869 (1992) (inquiry into obviousness of danger depends not upon actual knowledge of user but upon whether the danger was sufficiently obvious that it would be unreasonable to impose a duty to warn upon the supplier). If so, the risk posed by the boat-trailer combination was obvious and Maddox properly bears responsibility for any injury he suffered in assuming it. A review of the evidence leads us to conclude that summary judgment could not properly be granted on this basis.

Maddox testified at his deposition that he did not feel the full force of the tongue-weight until he removed the tongue from the hitch. At that point he had no choice wheth-

---

**7.** In holding that his employer was not liable for back injuries suffered by a bellboy while attempting to lift a heavy suitcase, the Washington Supreme Court observed:

> Any person of intelligence can estimate his own physical strength.... [N]o emergency [is] alleged. By a reasonable exercise of his faculties, [plaintiff] could have estimated his own strength and his ability to move the box in any particular manner.... In [such] a case as

> this, when it appears that information concerning a task assigned by an employer to an employee, or the opportunity to acquire such information, is shared equally by the persons concerned, ... the general rule is that the employer is not liable for an injury suffered by the employee.

*Cotton v. Morck Hotel Co.*, 32 Wash.2d 326, 201 P.2d 711, 718 (1949).

er to lift the tongue, as he already bore its full weight. River and Sea presented no evidence suggesting that Maddox would have been aware of the magnitude of the tongue-weight before he removed the tongue from the hitch.[8] Thomson testified during his deposition that tongue-weights vary substantially even between boats of similar length, and that it is quite difficult to predict how heavy a boat-trailer combination will be. The Paulk affidavit suggested that the proper tongue-weight of the boat-trailer combination sold to Maddox would be between 80 and 159 pounds. Drawing all inferences in favor of Maddox, reasonable minds could differ based upon this evidence as to whether Maddox should have appreciated the risk of injury before lifting the tongue.

Weight is generally obvious to a person lifting an object directly from the ground, before one actually lifts the object. However, the tongue-weight of the boat-trailer combination is largely determined by the placement of the axle of the boat trailer. Accordingly, the weight of this object was not obvious in advance. Moreover, the tongue-weight was partially borne by the hitch as Maddox removed it.

The evidence leaves in material dispute the question whether Maddox could reasonably be expected to realize the hazards associated with lifting the trailer. Under these circumstances, summary judgment should have been denied. The danger of injury inherent in detaching the trailer manually was not sufficiently obvious to relieve River and Sea of any duty to warn Maddox of the weight of the combination.[9]

### D. Causation

■ River and Sea argues, in the alternative, that summary judgment was appropri-

ate because Maddox's injuries were not caused by the weight of the tongue. We may affirm the superior court's decision to grant summary judgment on alternative grounds. *Wright v. State*, 824 P.2d 718, 720 (Alaska 1992) ("This court is not bound by the reasoning articulated in the trial court and can affirm a grant of summary judgment on alternative grounds."). River and Sea contends that because Maddox placed himself five to six feet from the end of the tongue, he subjected himself to greater force than if he had lifted the trailer at the end. Accordingly, River and Sea argues that his improper positioning, rather than the excessive tongue-weight, caused Maddox's injury. We decline to affirm on this ground.

■ *Morris v. Farley Enters., Inc.*, 661 P.2d 167 (Alaska 1983), enunciates a two-part test of legal causation in negligence cases. First, plaintiff must show that the accident would not have happened "but for" the defendant's negligence. Second, the negligent act must have been so important in bringing about the injury that a reasonable person would regard it as a cause and attach responsibility to it. *Id.* at 169. Given the standard of review in cases involving summary judgment, we conclude that summary judgment could not be granted on the evidence presented.

The only evidence concerning the tongue-weight was that contained in the Kintzele affidavit, which states that as the trailer was configured at the time of Maddox's injury the weight at the end of the tongue was 394 pounds. It was presumably [10] heavy enough to cause some injury to Maddox, even if he had positioned himself at the safest point. A jury could reasonably conclude that but for

---

8. Maddox's experience as a boat salesman may have made it more reasonable for River and Sea to assume that he was aware of the hazard posed by manual lifting. However, Maddox testified in his deposition that he had not previously sold trailers.

9. For a case in which the danger of lifting was obvious and led to a contrary result, compare *Pratt v. Lifemark Corp.*, 531 So.2d 488, 490 (La. App.1988), *writ denied*, 536 So.2d 1214 (La.1989) (in holding that hospital owed no duty to physician injured while lifting heavy patient due to

slight likelihood of such injury, court notes "[s]ome risks are reasonable and the individual encountering such risks bears the responsibility of dealing with and/or avoiding them. Here the risk was injury to the plaintiff's back as he lifted and pushed the heavy patient. This was an obvious and reasonable risk which the defendant had no duty to protect against.").

10. No evidence on this point was adduced before the trial court. It cannot be said that there is no doubt that a tongue-weight of this magnitude cannot cause injury.

River and Sea's failure to warn Maddox, or make the combination less heavy, Maddox would not have suffered injury. *Cf. Great Atl. & Pac. Tea Co. v. Lang,* 291 S.W.2d 366, 367 (Tex.Civ.App.1956) (finding no liability of employer to employee for back injury suffered while lifting heavy crate, where "[t]here was a safe way by which [plaintiff] could have performed this task if he had chosen to use it."). Similarly, a reasonable jury could regard River and Sea's alleged negligence as a cause of Maddox's injury.

While Maddox may have been comparatively negligent in positioning himself improperly while lifting the boat and hence partially responsible for his injuries, *see Kaatz v. State,* 540 P.2d 1037, 1049 (Alaska 1975) (plaintiff's damages reduced in proportion to amount of negligence attributable to plaintiff), River and Sea has presented no evidence suggesting that Maddox's action was the sole cause of his injury. *See Dura Corp. v. Harned,* 703 P.2d 396, 406 (Alaska 1985) ("The issue of proximate cause is normally a question of fact for the jury to decide and becomes a matter of law only where reasonable minds could not differ.").

### E. *River and Sea's Failure to Discover Faulty Tongue–Jack*

Maddox also presents an alternative negligence theory, based upon the faulty tongue-jack.[11] The superior court made no findings as to whether River and Sea's failure to discover the faulty jack was negligent, and the record contains little evidence supporting or refuting such a conclusion. This theory does not present a sufficient basis upon which to affirm the trial court.[12]

11. Maddox alleges that River and Sea violated its duty to him by providing a trailer with a defective jack. We infer that the negligent conduct to which he refers is River and Sea's failure to detect the faulty jack.

12. The issues discussed in this opinion are also likely to arise under a failure to inspect theory. In determining whether the broken jack proximately caused Maddox's injury, the trial court will have to determine whether his attempt to manually detach the trailer was foreseeable in light of the circumstances. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*

### IV. *CONCLUSION*

We REVERSE the superior court's grant of summary judgment and REMAND the case for further proceedings.

EASTAUGH, Justice, dissenting.

I agree with the court's discussion of the controlling legal principles, but disagree with the result it reaches. In my view, the alleged danger was obvious. Under *Restatement (Second) of Torts* section 388 (1965), River & Sea could not be expected to believe that users of the boat and trailer combination would fail to "realize its dangerous condition." River & Sea consequently owed Maddox no duty to protect him from the "dangerous condition" presented by the excessive tongue weight.

The court correctly notes that "a seller is not liable for injuries caused by an obviously dangerous product." Op. at 1037 (citing *Mele v. Turner,* 106 Wash.2d 73, 720 P.2d 787, 790 (1986); *Nichols v. Westfield Indus., Ltd.,* 380 N.W.2d 392, 400 (Iowa 1985)). It concludes, however, that "[t]he evidence leaves in material dispute the question whether Maddox could reasonably be expected to realize the hazards associated with lifting the trailer," and therefore reverses the summary judgment. Op. at 1039.

As the court recognizes, the danger posed by attempting to lift an obvious weight is usually obvious. Op. at 1038. *See Cotton v. Morck Hotel Co.,* 32 Wash.2d 326, 201 P.2d 711, 718 (1949).

Assuming for sake of discussion that the weight of some objects might present dangerous conditions actionable under *Restatement* section 388,[1] that is not the case here.

§ 42, at 274 (5th ed. 1984) (noting similarity of proximate cause and duty analysis).

1. Thus, some objects might theoretically mislead users into assuming that they are not weighty, at all. A reasonable user might be exposed to danger by lifting the object in a manner ill-suited to hefting a heavy weight. One who sells a leaden pillow might, therefore, be subject to liability for failing to warn a purchaser that its weight is dangerously greater than it appears to be. Perhaps an object's weight might also pose a non-obvious hazard if a consumer could set it into downward motion without first lifting its full

The tongue weight was inevitably disclosed and obvious to any person who sought to unhitch the trailer. A person unhitching the trailer had to lift the hitch, and thus the tongue, several inches to clear the towing ball on which the hitch rested. Maddox testified that it was an inch and seven-eighths or a two-inch standard ball. To unhitch the trailer, he had to raise the tongue some inches vertically to clear the top of the ball attached to his truck. The user consequently could assess the full tongue weight before the hitch cleared the top of the ball; before the hitch cleared the ball, the user could always release the weight, allowing the hitch to drop safely over the ball. The full weight thus became obvious during the lift. The potential danger (any discrepancy between the user's lifting ability and the undisclosed tongue weight) was inevitably disclosed to the user.

This method of discerning the tongue weight is more valuable to a consumer than a written disclosure. Except perhaps for skilled weight lifters, written disclosure of a non-trivial weight would help few consumers decide whether they could safely lift an object. Most would have to do what reasonable persons must be expected to do: assess the weight against their own abilities while taking up the tongue weight and raising the hitch. The ineffectiveness of disclosure confirms the infirmity of imposing a duty here. Apart from fluctuations resulting from what the boat was carrying and where the contents were located relative to the trailer's axle, disclosing tongue weight would reveal to few consumers whether they could safely unhitch the trailer by hand.

Nothing about the boat and trailer combination sets it apart from other moderately heavy products provided to consumers. If there were legal justification for imposing a duty to disclose weight in this case, it would logically extend to other consumer products, including televisions, stoves, and refriger-

ators. It should apply to outboard motors, because of the danger consumers might injure themselves lifting the motors from ground level or removing them from boat transoms.

Likewise, any duty to disclose the tongue weight of an eighteen-foot boat and trailer combination would apply to all boat-trailer combinations. It would apply to smaller boat-trailer combinations because some owners are foreseeably less able than Maddox. It would apply to much larger boat-trailer combinations, because some users will inevitably fail to appreciate that the weight exceeds their ability to lift safely and because tongue weights will inevitably exceed the capabilities of any consumer. It is irrelevant that Maddox's trailer and boat may have been mismatched and that the tongue weight was "excessive." The tongue weight of a properly matched and adjusted boat and trailer could still exceed the safe lifting capabilities of some consumers.

No purchaser reasonably could have expected from the appearance of the boat and trailer that the tongue weight would be trivial and could be safely lifted by all consumers, regardless of their strength, infirmity, age, experience, or intelligence. Maddox submitted evidence the tongue weight should have been between 100 and 200 pounds. Some consumers are incapable of safely lifting such weights, but that does not mean the failure to disclose them creates a duty under section 388.

Knowledge of gravity must be imputed to all consumers. I would find no duty given the salient facts of this case: a vertical lift of a non-trivial weight with opportunities to compare the weight with the user's ability to lift and to safely release the weight if it seemed excessive. I would affirm the summary judgment.

---

weight. *Forsman v. Seattle Elec. Co.,* 58 Wash. 666, 109 P. 121 (1910).

Where a party undertakes to raise a heavy body from the ground, he has notice of the weight before the danger period arrives. It is very different, however, where one undertakes

to unload an object from a wagon or a car, and has no notice other than the appearance of the object, until the weight is upon him and the danger period at hand. In brief, in the one case he can desist when the danger becomes apparent, and in the other he cannot. *Id.* 109 P. at 122.