SAMUEL, Judge.
This is a suit for personal injuries resulting from a vehicular accident. The defendants are Charles Smith, driver of one of the vehicles involved, C. T. Patterson Co., Inc., Smith’s employer, and their insurer, Gulf Insurance Company. Defendants’ answer denies liability and alternatively pleads contributory negligence. American Can Company, plaintiff’s employer, a self-insurer under the Louisiana Workmen’s Compensation Act, intervened for workmen’s compensation, including medical expenses, which it had paid.
Following trial on the merits judgment was rendered in favor' of plaintiff and against defendants in the sum of $28,481.-47, in favor of intervenor and against plaintiff in the sum of $5,847.06, and in favor of intervenor and against defendants in the sum of $1,106.77 for medical expenses.
Defendants have appealed. In this court they contend: (1) the defendant driver was not negligent; alternatively, (2) plaintiff was contributorily negligent; and, also alternatively, (3) if there is liability on the part of defendants, the award for plaintiff’s injuries is excessive.
Evidence relative to the occurrence of the accident consists of testimony given by plaintiff, the defendant driver and two other witnesses, an employee and a former employee of the intervenor, and various photographs of the area in which the accident took place. The latter two witnesses testified only relative to the usual and ordinary procedure in loading and unloading trucks in intervenor’s yard on Orleans Avenue in the City of New Orleans. From that evidence we find the following facts, as did the trial judge:
The accident occurred in intervenor’s yard on September 11, 1967 at about 2:30 p. m. There was a multi-story building forming an L on two sides of the yard with loading docks located on both inner sides of the L. As one entered the yard from Orleans Avenue the longer loading platform was to the right and the shorter loading platform to the left. There was a receiving station for deliveries in the corner of the L. In order to load the large trailer-trucks used to deliver intervenor’s product, those vehicles customarily backed against the dock with the back doors secured flat against the sides of the trailer. After the trailer had been loaded it was necessary to move the rig away from the loading dock and into the yard in order to close the back doors.
Plaintiff was a driver of one of those American Can trailer-trucks. On the day of the accident his rig had been backed to the platform and loaded. After it was loaded he moved the rig forward into the yard and stopped for the purpose of closing the back doors, got out of the cab on the left or driver’s side, walked to the rear of the trailer and released the left back door. He then pushed that door around to the back in order to close it. At that time the one and one-half ton pickup truck driven by Smith was backing through the space between plaintiff’s rig and other rigs still at the loading dock. The rear of the defendant truck struck the door which plaintiff was in the process of closing. The force of the collision swung the door back against plaintiff, pushing him against the *212 side of his trailer and then down on his knees.
Smith, the defendant driver, had made frequent deliveries to American Can, sometimes as often as five days a week. He was thoroughly familiar with the method used in loading American Can rigs, including the custom of pulling the rig out into the yard in order to close the trailer doors. On the day of the accident there were four rigs, including the plaintiff vehicle, parked at the loading platform when Smith entered the yard. Upon entering Smith veered to the left to get past the rigs at the loading dock and drove forward to the center of the L in order to make his delivery to the receiving office. He remained in the receiving office approximately 20 minutes. When he came out he saw the plaintiff rig pulled out into the yard. He knew it was loaded but did not notice whether or not the trailer doors were closed. Seeing no one in the rig, he got into his pickup truck and started to back up between plaintiff’s rig and the others located at the loading dock. He did not sound his horn or give any other warning and he saw the door of the plaintiff trailer closing too late to stop his truck in time to avoid the collision.
We are satisfied that when Smith observed plaintiff’s rig and entered his truck, plaintiff was in the process of walking towards the back of his trailer which was between the two drivers and prevented them from seeing each other. Although plaintiff had seen the defendant truck when he pulled forward from the platform, at that time Smith was still in the receiving office and no one was in or around the pickup truck. The space Smith was attempting to back through, i. e., the distance between the rear of plaintiff’s trailer and the front end of the nearer rig still at the platform, was approximately 12 feet according to Smith and approximately 25 feet according to plaintiff.
While it is not negligence per se to back a vehicle, in so doing a motorist is charged with the duty of exercising ordinary care to see the maneuver will not injure others or damage their property; and by ordinary care is meant the degree of caution which would be observed by a reasonably prudent person under similar conditions and circumstances.[1]
In the instant matter the defendant driver was thoroughly familiar with the practice of pulling rigs into the yard from the loading platform in order to close the trailer doors. He saw plaintiff’s rig in the usual position for performing that function and knew plaintiff’s trailer was loaded. He could and should have seen the trailer doors were open and should have anticipated the possibility, even the probability, that the driver of the rig was about to close the door on the farther side of the trailer, despite these considerations, he proceeded to back his vehicle through the comparatively small space without first ascertaining whether or not the doors were about to be closed and without sounding his horn or giving any other warning to the plaintiff. Under these circumstances, especially in view of Smith’s knowledge of the usual practice and custom prevailing in the yard, he did not exercise that degree of caution which would be observed by a reasonably prudent person under similar circmumstanc-es. Accordingly, we find he was negligent.
On the other hand, we find no contributory negligence on the part of plaintiff. He was proceeding to close the trailer doors in the manner usual and customary in the yard and having seen the defendant pickup truck parked near the receiving station without an occupant and with no one near that truck, he could not *213 reasonably have anticipated it would have been backed up in time to strike the door he was closing.
The record contains a great deal of evidence relative to plaintiff’s injuries. The medical portion of that evidence consists of the testimony of Drs. A. W. Bohmfalk, a general practitioner; Raymond F. Kitziger, O’Neal Pollingue, Kenneth Saer, and James Truman Kerr, orthopedic surgeons; Richard W. Levy and Earl R. Hackett, neurosurgeons; and Maurice A. Pearl, company physician for the intervenor, American Can. In addition the medical reports of Dr. Frank W. Gambino, plaintiff’s family physician who was deceased at the time of trial, and Dr. W. Rosenthal, who saw plaintiff upon his first admission to a hospital following the accident, were received in evidence.
While the medical evidence is contradictory in some instances, we find the following facts, again as did the trial judge:
Immediately following the accident plaintiff, 32 years of age at that time, was brought to Baptist Hospital in New Orleans where he was seen by Dr. Rosenthal. The next day he was seen by Dr. Gambino, who treated him until January 12, 1968 for injuries diagnosed by him as sprain and severe contusions of the left shoulder and shoulder joint, contusions of the posterior lateral chest wall, strain of the left hip, lower back and lumbar sacral region, and abrasion of the left elbow.
Plaintiff remained in the hospital for about six weeks. During that time he was seen by Dr. Pollingue who performed an orthopedic examination and prescribed a lumbosacral belt which plaintiff wore for one and one-half years.
On the advice of his treating physician plaintiff attempted to return to work on January IS, 1968. But he was unable to bear the back pain after working only half a day. Thereafter, from January 18, 1968 to April 4, 1968 he was treated by Dr. Kerr for the back and shoulder troubles. He returned to work in March, 1968 and continued working for a period of approximately ten weeks when he again had to stop working because of arm, shoulder and back pain.
Plaintiff saw Dr. Bohmfalk June 17, 1968 for severe pain in the shoulder and tenderness in the lumbar region and lower back. That physician made a diagnosis of severe sprain and strain of the lumbar region and possible inflammatory arthritis of the right shoulder. Plaintiff was hospitalized for 24 days in June and July, 1968. Dr. Kitziger, who was called in consultation for an evaluation of the shoulder, diagnosed that condition as a right bicipital tendonitis, an inflammatory condition related to the accident by the two treating physicians.
In October, 1968 plaintiff again was hospitalized, this time primarily for problems with his legs which at the time of trial constituted his most serious physical complaint. A patellectomy (removal of a knee cap) was performed by Dr. Kitziger in August, 1970. However, neither Dr. Kit-ziger nor the other testifying orthopedic surgeons related the knee problems to the accident in suit and the trial judge made no award therefor.
Since the accident plaintiff has been hospitalized nine times. Some of those occasions were solely for conditions resulting from the accident. The remaining occasions were for other conditions as well as those connected with the accident. He has not been gainfully employed since June 3, 1968 and he has been under constant medical attention since the accident. Upon his last hospital discharge he was somewhat improved; but he has developed calcification of the right humerus which also is related to the accident.
The trial judge found plaintiff’s injuries resulting from the accident consisted of a severe type of lumbar sacral sprain or strain of about one year’s active duration, from which he was still suffering intermittently at the time of trial, and a right bicipital tendonitis, inflammation of the tendons in the shoulder joint area, with restrictions in both shoulders and limitation of motion, a permanent and disabling condition from which he will suffer for the *214 balance of his life. We agree with those findings.
As mentioned above, the total amount awarded to plaintiff was $28,481.47. Of this amount $1,805.47 was for medical expenses and $7,175 was for lost wages. The balance of the award, $19,500 for plaintiff’s injuries, is the only amount in dispute in this appeal.
Considering all of the evidence, particularly the length of time plaintiff has suffered and will continue to suffer, together with the fact that some of his troubles are of a permanent and disabling nature, we conclude the award is not so excessive[2] as to constitute an abuse of the “much discretion” given the trial judge by LSA-C.C. Art. 1934(3).[3]
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. Vonderbruegge v. Bethea, La.App., 250 So.2d 407; Barnes v. State Farm Mutual Ins. Co., La.App., 229 So.2d 440; Boy v. United Gas Corporation, La.App., 163 So.2d 587; Ratcliff v. Insurance Co. of State of Pennsylvania, La.App., 151 So.2d 90.

. For somewhat similar injuries see : Joyner v. Aetna Casualty & Surety Company, 259 La. 660, 251 So.2d 166; Nuccio v. Fireman’s Fund American Insurance Cos., La.App., 250 So.2d 802; Miller v. Rooks, La.App., 256 So.2d 499; Barker v. Phoenix Insurance Company, La.App., 220 So.2d 720.

. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 ; Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64; Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127; Thibodeaux v. Travelers Indemnity Company, La. App., 215 So.2d 215.