338 So.2d 600 (1976)
Mary Alice GUILBEAU et al., Plaintiffs-Appellants-Relators,
v.
LIBERTY MUTUAL INSURANCE COMPANY et al., Defendants-Appellees-Respondents.
No. 57498, 57511 and 57520.
Supreme Court of Louisiana.
October 6, 1976.
Rehearing Denied November 5, 1976.
*601 Joseph J. Piccione, Lafayette, for plaintiff-applicant in No. 57498 and for plaintiff-respondent in Nos. 57511 and 57520.
Robert J. Vandaworker, Taylor, Porter, Brooks & Phillips, Baton Rouge, for defendants-applicants in No. 57511 and for defendants-respondents in Nos. 57498 and 57520.
David W. Robinson, Watson, Blanche, Wilson & Posner, Baton Rouge, for Continental Ins. Co., defendant-applicant in No. 57520 and defendant-respondent in Nos. 57498 and 57511.
Christopher E. Lawler, Porteous, Toledano, Hainkel & Johnson, New Orleans, for defendant-respondent in Nos. 57498, 57511 and 57520.
TATE, Justice.
The issues of this case revolve about the tort liability, if any, for the death of an employee at work. They also concern the potential coverage of various liability insurance policies for alleged wrongful conduct on the work scene.
The widow of John Albert Guilbeau brings suit for his wrongful death. Guilbeau was killed while at work on a highway construction job. A truck backed into him. The court of appeal affirmed the dismissal of this tort suit, holding that the plaintiff widow's exclusive remedy was for workmen's compensation. 324 So.2d 571 (La. App. 1st Cir. 1976).
Issues
The court of appeal held that Guilbeau was killed while in the employment of a joint venture composed of two corporations, Caldwell and Wilson. The exclusive remedy of his widow, it held, was for workmen's compensation, both as against the joint venture (partnership) itself and also as against the two joint venturers (Caldwell and Wilson). It so held despite allegations that Guilbeau, as an employee of Caldwell, was killed through the negligence of employees of Wilson, the other joint venturer (partner).
We granted certiorari, 326 So.2d 379 (La. 1976), primarily because we thought this holding might conflict with the principles announced by Cooley v. Slocum, 326 So.2d 491 (La.1976). There, we held that, since a partnership is a separate entity under Louisiana law, a partner is individually liable for his own negligence to an employee of the partnership.
*602 For the reasons to be stated (see I below), however, we do not reach this issue under the present facts. Nevertheless, by reason of the unrestricted grant of certiorari, the whole case is before us, and we must therefore decide other issues of the litigation (primarily, the negligence of the truck driver, see II below, and the coverage of certain insurance policies, see III below), which properly were preserved by the plaintiff for our review. La.Const. of 1974, Article 5, Section 5(F); Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971).

I.
We do not reach the Cooley v. Slocum issue because, on review of the record, we find no negligence of any employee of either Caldwell or Wilson caused Guilbeau's death.
Guilbeau was struck from the back by a backing truck while he was walking on the shoulder of the highway. As we shall note later (II), the driver of this truck was negligent, but he was not an employee of either Caldwell or Wilson.
The plaintiff's evidence charging Caldwell and Wilson with negligence is principally based upon the alleged failure of Billy Works, the general supervisor of the construction job, to provide adequate safety features and instructions for the crews working at the site. Billy Works was a supervisory employee furnished by Caldwell to the joint venture, allegedly subject also to joint control by Wilson.
The record reflects no arguable basis for negligent supervision on the part of Works, except for one possibility:
The trucks which dumped the asphalt mix were required to back along the shoulder from a turnaround to an asphalt spreader some 1500 feet west of the turnaround. While the driver was so backing his truck there was a cone-shaped blind spot to his immediate rear.
The contention is made that Works was negligent in not appreciating the hazard to persons walking along the shoulder to the rear of the backing truck, and in not employing a flagman to guide the truck as it backed this comparatively long stretch of shoulder.
Actionable negligence results from the creation or maintenance of an unreasonable risk of injury to others. Smolinski v. Taulli, La., 276 So.2d 286 and authorities there cited. In determining whether the risk is unreasonable, not only the seriousness of the harm that may be caused is relevant, Allien v. Louisiana Power & Light Co., 202 So.2d 704 (La.App. 3d Cir. 1967), certiorari denied, 251 La. 392, 204 So.2d 574 (1967), but also the likelihood that harm may be caused, Goff v. Garlino, 181 So.2d 426 (La.1965), certiorari denied, 248 La. 1033, 183 So.2d 653 (1966). See also: Restatement of Torts, Second, Sections 291-293 (1965).
The evidence indicates that it is not customary in highway construction to have flagmen stationed for the purpose of directing the truck as it backs up under the circumstances presented. While customary practices may be relevant in determining negligence, they are not conclusive or controlling in the judicial determination of whether unreasonable risk has resulted from the conduct in question. Larned v. Wallace, 146 So.2d 434 (La.App. 3d Cir. 1962), certiorari denied (La.1963).
Nevertheless, the evidence indicates that the chances of injury to others are relatively slight in such backing operations, because of the limited nature of the blind spot and because ordinarily the backing truckdriver will observe those in the path of the truck in time to stop. The comparatively slight likelihood of injury resulting from the lack of a flagman, justifies us in affirming the trial court's holding that Works or other supervisory employees of Caldwell and Wilson were not negligent in failing to supply one, Miller v. Southern Farm Bureau Cas. Ins. Co., 189 So.2d 463 (La.App. 3d Cir. 1966), certiorari denied 249 La. 750, 190 So.2d 912 (1966), Stanley v. Missouri Pacific Railroad Company, 179 So.2d 490 (La.App. 3d Cir. 1965), in accordance with the usual practice of the industry.
*603 Therefore, neither Caldwell nor Wilson (nor their liability insurers, insofar as sued on such ground) can be held liable because of any negligent conduct of the supervisory employees on the construction contract in which Guilbeau was accidentally killed.

II.
The grant of certiorari has also brought up for review the issue of whether the truckdriver was negligent in backing into Guilbeau, and whether Guilbeau's contributory negligence barred his widow's recovery.
The evidence proves the truckdriver to have been negligent.
He was backing his heavy dumptruck westward on the shoulder from the turnaround some 1500 feet east of the point at which the decedent was struck and killed. The uncontradicted evidence shows that, immediately following the accident, the driver admitted that he had been looking at his left-rear-view mirror only, watching for only some vehicles parked in the blocked-off construction lane of the highway to the immediate left (north) of his truck.[1] The decedent was walking on the right (south) edge of the shoulder and was struck by the right rear of the truck.
The truckdriver was negligent in failing to maintain adequate lookout for people who might be in his rearward path. The evidence shows that not only the plaintiff but also other workmen on the job used the shoulder in walking from place to place within the construction site.
Furthermore, while the truckdriver was backing from the turnaround area (which was 1500 feet[2] east of the point of impact), Guilbeau had entered and crossed the shoulder (having parked a pickup truck in the blocked-off highway lane to its immediate north) and was then walking westward on its south edge some 159 feet before he was struck from the rear. (One of the decedent's co-workers saw the truck backing some distance behind the plaintiff as the latter, facing away from the truck, walked back to the spreader; but the co-worker turned to other tasks, not anticipating any danger.) No explanation is shown for the driver's failure to observe Guilbeau on the shoulder, as the driver backed towards him at a rate of speed faster than the plaintiff's walk.
The cone-shaped blind spot to the immediate rear of the truck was from the width of the truck at the back, tapering to a point 121 feet to the rear. Even if Guilbeau had been walking in the dead-center of the truck's rear, the truckdriver could have observed him from either mirror (had he been watching the stretch in back of him instead of the parked vehicles to his left) up to a point 121 feet from the point of impact. Actually, Guilbeau was walking on the right (south) edge of the shoulder and was observable from the rear-facing right-view mirror until immediately before the truck struck him.
The driver of the dump truck was negligent in heedlessly backing his truck without keeping a proper lookout or ascertaining that his path was clear. See Reeves v. Louisiana and Arkansas Railway Co., 282 So.2d 503 (La.1973); Eckel v. C. T. Patterson Co., Inc., 279 So.2d 210 (La.App. 4th Cir. 1973); Davide v. Jackson Paving Co., 238 So.2d 359 (La.App. 3d Cir. 1970); Ratcliff v. Ins. Co. of State of Pa., 151 So.2d 90 (La. App. 1st Cir. 1963). See also Roy v. United Gas Corp., 163 So.2d 587, 591-92 (La.App. 3d Cir. 1964).
Despite such negligence, the trial court held that Guilbeau's own contributory negligence barred his widow's recovery. The contributory negligence consisted of exposing himself to the risk of the trucks periodically backing down the shoulder on which he walked, without observation to his rear.
*604 Assuming this to be so, the trial court failed to consider that the backing truckdriver had the last clear chance to avoid the accident. The slightest observation on his part would have disclosed to him the pedestrian in the backing path of his heavy dumptruck, facing away from the truck and obviously unaware of its approach. At the distance by which an ordinarily prudent lookout would have disclosed the pedestrian, the truckdriver could have easily stopped the truck or sounded his horn to awaken the pedestrian to his danger and so have avoided the accident and death.
Under Louisiana jurisprudence, an operator of a vehicle or heavy equipment who observes, or who should by the exercise of reasonable care have observed, a pedestrian in a position of peril of which the latter is apparently unaware, is responsible for injuries caused when his vehicle strikes the pedestrian in his path, despite any contributory negligence on the part of the latter; providing that, after the duty to make such observation arose, the operator could reasonably have avoided the accident.
See: Reeves v. Louisiana and Arkansas Railway Company, 282 So.2d 503 (La.1973); Belshe v. Gant, 235 La. 17, 102 So.2d 477 (1958); Jackson v. Cook, 189 La. 860, 181 So. 195 (1938); Rottman v. Beverly, 183 La. 947, 165 So. 153 (1936); Comment, 27 La.L. Rev. 269 (1967). See also: Leake v. Prudhomme Truck Tank Service, 260 La. 1071, 258 So.2d 358 (1972); Williams v. City of Baton Rouge, 252 La. 770, 214 So.2d 138 (1968).
Accordingly, the truckdriver and those responsible for his negligence (see III) are liable to the plaintiff widow.

III.
We now consider which, if any, of the defendants before us are liable for the negligence of the truckdriver:
Defendants J. B. Higgins and his insurer Cotton Belt
The driver was an employee of J. B. Higgins d/b/a Higgins Trucking Company. The large dumptruck and its driver had been leased to the joint venture composed of Caldwell and Wilson, for purposes of hauling asphalt-mix from a mixing plant to the work-site where the accident occurred.
Higgins was made defendant, but no pleadings were filed on his behalf, nor was any default taken against him. (Apparently, as in the case of some other named defendants, no service was actually made upon him.) Consequently, no judgment can be entered against him.
We therefore do not review the intermediate court's conclusion that J. B. Higgins, the negligent driver's employer, was relieved of liability for his own employee's torts, because the employee had been "borrowed" by the joint venture.
We granted certiorari, however, partially because we entertained doubt whether this conclusion could be correct, since both lending general employer (with power to discharge or forecall or substitute) and borrowing special employer (with power of direction at the scene) shared the power to control the employee, who after all is working for the special employer in the performance of his general employment for which he is employed and paid by his general employer.[3] The Louisiana jurisprudence until now has not been concerned with the common liability of both general and special employer to third persons injured through the negligence of their common employee. But cf. Humphreys v. Marquette Casualty Co., 235 La. 355, 103 So.2d 895, 906-07 (1958). The decisions have mostly been concerned with the tort liability of either a general or of a special employer alone made defendant, or with determining the liability inter se of the one most concerned, La.Civil Code art. 2106, and therefore as between them primarily liable for the injury.
*605 However, Higgins' liability insurer, the Cotton Belt Insurance Company was served and is a party to this suit. Under its omnibus clause, which insurers anyone using the truck with the consent of the named insured, the plaintiff is entitled to judgment against Cotton Belt for herself and her children in the amount of ten thousand dollars, the policy limits for injury to or death of one person.
As will be noted, however, the case must be remanded for determination of whether other insurers are also liable with Cotton Belt, and for fixing the claims in intervention filed by the compensation insurers under La.R.S. 23:1103, as well as to apportion the excess, if any, between the claims of the widow and of her children.
Defendants Caldwell and Wilson
The defendants Caldwell and Wilson are not liable in tort for the driver's negligence:
(1) If as the court of appeal held, Higgins and the truckdriver were furnishing contractual services to the joint venture, then the joint venture was responsible for the truckdriver's acts in compensation only, to the exclusion of tort, see La.R.S. 23:1032; for by similar factual interpretation Guilbeau's employing unit was likewise the joint venture, not Caldwell or Wilson.
(2) If on the other hand (as the plaintiff at one time contended) Higgins and its employee truckdriver were independent contractors performing part of Wilson's trade, business, or occupation, then likewise Guilbeau's widow's exclusive remedy against Wilson was for compensation. La.R.S. 23:1032, 1061.
(3) No theory is advanced by which Caldwell would be liable under respondeat superior for the tort of the truckdriver.
Liability of insurers of Caldwell and Wilson
In view of this last holding, and that in I above, Liberty Mutual, as insurer of Wilson, is not liable for the negligence of Wilson or of any of its agents under the comprehensive general liability policy introduced in evidence as Liberty Mutual Exhibit # 4. The policy, further, expressly excludes any liability arising out of the operation of use of any motor vehicle owned or rented or loaned to Wilson. See Exclusion (b).
However, a different issue is reached with regard to the Comprehensive Automobile Liability policies issued by Liberty Mutual to Wilson and by Continental to Caldwell, respectively. Exhibits P-3 and P-25.
Each of these policies defines a "hired automobile" as "an automobile not owned by the named insured which is used under contract in behalf of, or loaned to the named insured * * *." (Italics ours.) The policy term is distinguished from the policy definition of a "non-owned automobile", which is defined as neither an owned nor a hired automobile.
Both policies contain exclusion clauses stating that they do not apply to non-owned vehicles (only) used in joint ventures of which the named insured (Caldwell and Wilson, respectively) are members. This seems to indicate that policy coverage may apply when hired automobiles are used in joint ventures.
In describing the persons insured, each policy states that it insures any person using a hired automobile with the permission of the named insured. See "Persons Insured", Clause (c). This definition appears to be broad enough to cover liability for the present truckdriver's operation of the dumptruck involved in the accident, assuming that the truck thus furnished the joint venture (of which Wilson and Caldwell are members) was a "hired automobile" furnished to the joint venture and thus "used in behalf of" the respective named insureds.
Further, considering that the decedent Guilbeau was hired by the joint venture (as the court of appeal held) or by Caldwell (as his widow contends), it is apparent that a serious doubt exists as to whether Guilbeau could be a "fellow employee" of the truckdriver (employed by and paid by Higgins, not by the joint venture or by Caldwell) for purposes of an exclusion clause in each policy which provides: "None of the following *606 is an insured: (i) any person while engaged in the business of his employer with respect to bodily injury to any fellow employee of such person injured in the course of his employment * * *." (Italics ours.) Cf., Pullen v. Employers Liability Assurance Corp., 230 La. 867, 89 So.2d 373 (1956).
The court of appeal did not reach consideration of whether these policies covered the negligent operation of the truckdriver. The briefing of all parties concentrated on other issues than this one. Under these circumstances, we determine it to be the preferable procedure to remand this case to the court of appeal for determination of this issue, not briefed before us, and for decision as well of the subsidiary issues that may remain (quantum and the excess coverage clauses of these policies and Cotton Belt's) upon resolution of it.

Decree
For the foregoing reasons, we affirm the judgment of the court of appeal dismissing the plaintiff's suit against E. A. Caldwell Contractor, Inc., and Gaines P. Wilson, Inc.; but we reverse the judgment insofar as it dismissed the plaintiff's suit against the Cotton Belt Insurance Company, Inc., the Continental Insurance Company, and the Liberty Mutual Insurance Company, and we remand this case to the court of appeal for it to decide the case consistent with the views above-expressed, which will, inter alia, require it to determine: (1) the liability, if any, of Continental and Liberty Mutual under their comprehensive general automobile liability policies for the negligence of the defendant truckdriver; (2) the quantum of the total award due the plaintiff, if there be such coverage; (3) the apportionment between widow and children of the judgment in the amount of ten thousand dollars to be entered against Cotton Belt, after determining the liability of Continental and Liberty Mutual (including whether any of the three policies is excess insurance as to any of the others), while (4) fixing the amount due from the ultimate award to the intervenors, Continental and Liberty Mutual, for workmen's compensation payments made to the widow as insurers of the members of the joint venture.
All costs to be assessed upon final determination of these proceedings.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
SUMMERS, J., dissents for the reasons assigned by the Court of Appeal. See, La. App., 324 So.2d 571.
NOTES
[1] Although subpoenaed, the driver himself did not appear at the trial.
[2] Some of the discovery statements, not introduced into evidence, show the turnaround to be only 600 feet east of the point of collision. The 1500 foot distance is derived from the testimony of the investigating police officer, not seriously questioned as to his measurement. Under either distance, our result would be the same.
[3] See: Annotation, LeaseMachine and OperatorLiability, 17 A.L.R.2d 1388 (196 ); Restatement of Agency, Second, Section 226 and Comments (1958); Seavey, Handbook of the Law of Agency, Section 86 (1954); 53 Am. Jur.2d "Master and Servant, Section 415; 57 C.J.S. Master and Servant § 566.