PHILLIP ROBERSON, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF BRENDA B. ROBERSON
v.
ROMALIS GORDON, JR., LUCKY'S CASINO, AMERICAN GUARD SECURITY COMPANY, ABC INSURANCE COMPANY, AND XYZ INSURANCE COMPANY
No. 2009 CA 0472.
Court of Appeals of Louisiana, First Circuit.
October 23, 2009.
Not Designated for Publication
JOSEPH J. WEIGAND, Jr., Counsel for Plaintiff/Appellant, Phillip Roberson, Individually and on Behalf of the Estate of Brenda B. Roberson.
DAVID M. WHITAKER, Counsel for Defendants/Appellees, Houma-Coteau Holdings, L.L.C. d/b/a Lucky's Casino and American Guard & Security, L.L.C.
BEFORE: WHIPPLE, HUGHES, and WELCH, JJ.
HUGHES, J.
This is an appeal from a summary judgment in a tort suit dismissing as defendants two companies found to be joint employers entitled to the tort immunity under the exclusivity provisions of the Louisiana Workers' Compensation Law. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
On March 3, 2006 Brenda B. Roberson was working as a security guard at Lucky's Casino in Houma, Louisiana, when Romalis Gordon, Jr. shot and killed Ms. Roberson and another employee, Schaeffer Francis, while robbing the casino.
On September 29, 2006 a petition for damages and wrongful death was filed by Ms. Roberson's son, Phillip Roberson, individually, and on behalf of Ms. Robertson's estate. It was alleged that Ms. Roberson's employer, American Guard & Security, L.L.C. ("American Guard"),[1] and Lucky's Casino were negligent in the following respects: (1) in failing to provide their security guards with the proper equipment to guard large sums of money; (2) in failing to provide the security team with weapons to guard the large quantity of money being held by the casino; (3) in allowing a sixty-two-year-old elderly woman to serve as an unarmed overnight security guard at a casino; and (4) in failing to provide adequate security measures and devices inside the casino. The plaintiff also alleged that the casino operators knew or should have known that such an incident would or could occur and should have properly equipped and trained the security guards to handle such an occurrence. Further, plaintiff alleges that defendants "knew or should have known that given Ms. Roberson's age and abilities, or lack [thereof], and the possibility of such an occurrence as this, that Ms. Roberson should not have been assigned to this detail." Plaintiffs petition further asserted that that Lucky's Casino "knew or should have known that such an occurrence could have/would happen and should have had additional security measures in place to prevent such an occurrence."
A joint answer was filed by Houma-Coteau Holdings, L.L.C. d/b/a Lucky's Casino ("Houma-Coteau") and American Guard stating that Ms. Roberson was "jointly employed" by Rosbottom Employees, L.L.C. ("Rosbottom Employees"),[2] Houma-Coteau, and American Guard. Houma-Coteau and American Guard further pled the following affirmative defenses:
1.
Plaintiff's claims against Defendants are barred by the exclusive remedy provisions of the Louisiana [Workers'] Compensation Act, [LSA-]R.S. 23:1032, as Ms. Roberson was at all times employed by Defendants. In the alternative Defendants plead that they were Ms. Roberson's special or statutory employer, or in the alternative that Ms. Roberson was Defendants' borrowed employee, such that the exclusive remedy provisions of [LSA-]R.S. 23:1032 serve to bar the Plaintiffs claims against Defendants.
2.
Plaintiff's survival action pursuant to [LSA-C.C. art.] 2315.1 is barred in whole or in part by the [workers'] compensation death benefit that was paid to Ms. Roberson's surviving spouse and any settlement agreement executed in connection with such payment, which Defendants plead as a set off to and/or compromise of the Plaintiffs survival action.
3.
Defendants are not vicariously liable for the intentional criminal conduct perpetrated by Romalis Gordon, Jr., which was the sole cause of the injury to Ms. Roberson.
4.
Defendants plead the comparative fault of Ms. Roberson as a bar to or in diminution of Plaintiffs recovery.
Thereafter, Houma-Coteau and American Guard filed a motion for summary judgment based on the contention that the plaintiffs action is barred by the exclusivity provisions of the Louisiana Workers' Compensation Act, found in LSA-R.S. 23:1032, as Rosbottom Employees, Houma-Coteau, and American Guard were engaged in a joint venture; thus these defendants argue LSA-R.S. 23:1032 applies to all three companies.
A hearing on the motions for summary judgment was held October 24, 2008, during which the trial gave the following oral reasons for judgment:
These two ladies were brutally murdered by an animal.
But the question gets to be ... whether Ms. Roberson, as a security guard, has a right to sue Lucky's Casino, her employer or  her company who she was with . . . American Guard [S]ecurity. And that's the only two parties[.] . . . The Rosbottom [company] really technically is not a party.
* * *
. . . But what we have here is we have Lucky's Casino, which . .. has a license from the . . . gambling association. But there's American Guard Security [that] is a separate LLC, which is required by law to be a part of the gaming process. And then we have Rosbottom, who is the owner, which he does all the administrative checks and accounting and everything else and insurance. He's taking care of that. So we've got three different LLCs.
. . . On its face you can see right away it's a joint venture or a joint partnership. It's one guy that owns basically everything. It has to be set up the way it's set up because of the way the Legislature set the gaming industry. And the way they did it they require the guard system and the license and whatever. The way I approached it was if I was looking at it from the other end, that she was trying to claim workman's [compensation] and somebody was denying her. Would she be covered by Rosbottom or by American Guard or by Lucky's Casino? And I think the test works the same way. Whether she's excluded or whether she's included you use the same test. And whether she would be included would be, for me it's very easy to say: Oh yeah. She's covered. Technically she works for all three.
For American Security  I think her uniforms and stuff were through that. Her training was through that through a third party. But her daily being watched was by, by Lucky's Casino. I think there was some reports in there where she got either commended or maybe something was done wrong that they wrote up. So they did that. But her checks came from Rosbottom. And it's just a  [a]nd I may be wrong in saying this, fictitious. But it's not fictitious. It's really one owner and he's running everything but he has to run it through three different companies because of the way the law is.
And the insurance, the workman's [compensation] insurance, is covered by Rosbottom.
* * *
Which covered all the employees.
And I agree with you, there's a bunch of different companies. Apparently, a load of LLCs, the various, I guess, [truck] stops and various things that he's involved with and he runs them all through this one company and they're all covered.
But I think it's  [t]he way I look at it, it's just set up because of the way the law requires that they be set up. But there's only one employer, really, and they're all a joint venture. And I could even go  I don't think I have to go to the point of pulling that she was a borrowed servant; but I think I would agree with that looking at the nine [factors]  It's best, I think the majority of it would be covered.
... I think in the long run, ... there were very few facts that would be questionable.
The deposition of Mr. Cartolano, I think it was . . . pretty straightforward as to the way the company runs.
In accordance with the trial court ruling, a judgment was signed on November 3, 2008, granting the defendants' motion for summary judgment and dismissing the plaintiffs suit as to Houma-Coteau and American Guard.
Plaintiff has appealed this judgment contending the trial court erred in concluding that Houma-Coteau, American Guard, and Rosbottom Employees "were engaged in a `joint venture' because Brenda Roberson could receive workers' compensation benefits" from Houma-Coteau and American Guard.

LAW AND ANALYSIS

Motion for Summary Judgment
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by LSA-C.C.P. art. 969; the procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. 966(A)(2). Summary judgment shall be rendered in favor of the mover if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).
Appellate courts review summary judgments de novo under the same criteria that govern a trial court's consideration of whether summary judgment is appropriate. Samaha v. Rau, XXXX-XXXX, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882; Allen v. State ex rel. Ernest N. Morial-New Orleans Exhibition Hall Authority, XXXX-XXXX, p. 5 (La. 4/9/03), 842 So.2d 373, 377; Boudreaux v. Vankerkhove, 2007-2555, p. 5 (La. App. 1 Cir. 8/11/08), 993 So.2d 725, 729-30.
In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor. Hines v. Garrett, XXXX-XXXX, p. 1 (La. 6/25/04), 876 So.2d 764, 765.
A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Hines v. Garrett, 876 So.2d at 765-66.
On motion for summary judgment, the burden of proof remains with the movant. However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense, then the non-moving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment will be granted. LSA-C.C.P. art. 966(C)(2).
When a motion for summary judgment is made and supported as provided in LSA-C.C.P. art. 967, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. LSA-C.C.P. art. 967(B). See also Board of Supervisors of Louisiana State University v. Louisiana Agricultural Finance Authority, XXXX-XXXX, p. 9 (La. App. 1 Cir. 2/8/08), 984 So.2d 72, 79-80; Cressionnie v. Intrepid, Inc., XXXX-XXXX, p. 3 (La. App. 1 Cir. 5/14/04), 879 So.2d 736, 738.
Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Richard v. Hall, XXXX-XXXX, p. 5 (La. 4/23/04), 874 So.2d 131, 137; Dyess v. American National Property and Casualty Company, XXXX-XXXX, p. 4 (La. App. 1 Cir. 6/25/04), 886 So.2d 448, 451, writ denied, XXXX-XXXX (La. 10/29/04), 885 So.2d 592; Cressionnie v. Intrepid, Inc., XXXX-XXXX at p. 3, 879 So.2d at 738-39.

Louisiana Workers' Compensation Law
The Louisiana Workers' Compensation Act provides the exclusive remedy against an employer for the injury or death of an employee. Deshotel v. Guichard Operating Company, XXXX-XXXX, p. 14 (La. 12/17/04), 916 So.2d 72, 81. The text of LSA-R.S. 23:1032 explicitly immunizes a defendant/employer from tort liability where the decedent/employee suffers injury or death during the course and scope of employment. Deshotel v. Guichard Operating Company, XXXX-XXXX at p. 20, 916 So.2d at 84.
The following provisions of the Louisiana Workers' Compensation Law are pertinent herein:
§ 1031. Employee's right of action; joint employers, extent of liability; borrowed employees
A. If an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.
B. In case any employee for whose injury or death payments are due is, at the time of the injury, employed and paid jointly by two or more employers subject to the provisions of this Chapter, such employers shall contribute to such payments in proportion to their several wage liabilities to the employee; but nothing in this Section shall prevent any arrangement between the employers for different distribution, as between themselves, of the ultimate burden of such payments. If one or more but not all the employers are subject to this Chapter, then the liability of such of them as are so subject shall be to pay that proportion of the entire payments which their proportionate wage liability bears to the entire wages of the employee; but such payment by the employers subject to this Chapter shall not bar the right of recovery against any other joint employer.
C. In the case of any employee for whose injury or death payments are due and who is, at the time of the injury, employed by a borrowing employer in this Section referred to as a "special employer", and is under the control and direction of the special employer in the performance of the work, both the special employer and the immediate employer, referred to in this Section as a "general employer", shall be liable jointly and in solido to pay benefits as provided under this Chapter. As between the special and general employers, each shall have the right to seek contribution from the other for any payments made on behalf of the employee unless there is a contract between them expressing a different method of sharing the liability. Where compensation is claimed from, or proceedings are taken against, the special employer, then, in the application of this Chapter, reference to the special employer shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the general employer by whom he is immediately employed. The special and the general employers shall be entitled to the exclusive remedy protections provided in R.S. 23:1032.
* * *
§ 1032. Exclusiveness of rights and remedies; employer's liability to prosecution under other laws
A. (1)(a) Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages, unless such rights, remedies, and damages are created by a statute, whether now existing or created in the future, expressly establishing same as available to such employee, his personal representatives, dependents, or relations, as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.
(b) This exclusive remedy is exclusive of all claims, including any claims that might arise against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal under any dual capacity theory or doctrine.
(2) For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.
B. Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
* * *
LSA-R.S. 23:1031-1032 (emphasis added).
If the work being done by an employee at the time of accident was in furtherance of a joint enterprise shared by all employers, so that each of them had a direct financial interest in the entire job, the court is presented with a case of partnership or joint enterprise liability. Under these circumstances there is in reality only one employer, namely the partnership or joint enterprise. Each partner controls the work for the benefit of himself and the other partners as well. The same general principles would appear to apply for other joint enterprises, such as a joint venture. H. Alston Johnson, III, 13 La. Civ. L. Treatise, Workers' Compensation Law and Practice § 59 (4th ed.) (citing Richard v. United States Fidelity & Guaranty Company, 247 La. 943, 175 So.2d 277 (1965); Dupre v. Coleman, 143 La. 69, 78 So. 241 (1918); Latiolais v. BFI of Louisiana, Inc., 567 So.2d 1159 (La. App. 3 Cir. 1990); United States Fidelity & Guaranty Company v. American Employers Insurance Company, 315 So.2d 822 (La. App. 3 Cir. 1975)). See also McGregor v. United Film Corporation, 351 So.2d 1224, 1230 (La. App. 1 Cir. 1977); Guilbeau v. Liberty Mutual Insurance Company, 324 So.2d 571 (La. App. 1 Cir. 1975), affirmed in part, reversed in part on other grounds, 338 So.2d 600 (La. 1976).
In order to subject several employers exercising joint control over an employee to the employee's workers' compensation claim, it is not necessary that each partner or joint venturer personally control work of the injured employee; it is sufficient that the joint venturers are engaged in common enterprise contemplating employment and control of the employee by one of the interested parties for the benefit of all. Babineaux v. Southeastern Drilling Corporation, 170 So.2d 518, 529 (La. App. 3 Cir.), writs refused, 247 La. 613-15, 172 So.2d 700 (1965), appeal dismissed, 382 U.S. 16, 86 S.Ct. 67, 15 L.Ed.2d 12.
The essential elements of a joint venture are generally the same as those of a partnership, namely, two or more parties combining their property, labor, skill, etc. in the conduct of a venture for joint profit, with each having some right of control. As a result, joint ventures are generally governed by the law of partnership. Peterson v. BE & K Inc. of Alabama, 94-0005, p. 5 (La. App. 1 Cir. 3/3/95), 652 So.2d 617, 622-23, writs denied, 95-0818, 95-0831 (La. 5/12/95), 654 So.2d 350, overruled on other grounds, Allen v. State ex rel. Ernest N. Morial-New Orleans Exhibition Hall Authority, XXXX-XXXX (La. 4/9/03), 842 So.2d 373. A partnership is a juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit. LSA-C.C. art. 2801. The same requisites are applicable to a joint venture and are as follows: (1) a contract between two or more persons; (2) a juridical entity or person is established; (3) contribution by all parties of either efforts or resources; (4) the contribution must be in determinate proportions; (5) there must be joint effort; (6) there must be a mutual risk vis-a-vis losses; (7) there must be a sharing of profits. What constitutes a joint venture is a question of law, while the existence or nonexistence of a joint venture is a question of fact. Peterson v. BE & K Inc. of Alabama, 94-0005 at pp. 5-6; 652 So.2d at 622-23.
In the instant case, the defendants' contention that a joint venture existed between Houma-Coteau, American Guard, and Rosbottom Employees, rendering all three companies joint employers of Ms. Roberson and subject to the exclusivity provisions of the Louisiana Workers' Compensation Act, is supported by answers to interrogatories filed into the trial court record, which stated, in pertinent part:
Mr. Harold Rosbottom, Jr. owns a number of businesses in the State of Louisiana, including several truck stop/restaurant/casino facilities, including a video poker casino located 1361 Highway 182 in Houma, Louisiana doing business as Lucky's Casino. These businesses, including Lucky's Casino, are operated through commonly owned limited liability companies.
Lucky's Casino is operated by [Houma-Coteau], a Louisiana limited liability company that is wholly owned by Mr. Rosbottom ("Lucky's Casino"). Lucky's Casino is staffed by cashier/collector employees and security guard employees, who in turn are supervised by a Location Manager. On March 3, 2006 Ms. Brenda Roberson was employed as a security guard at Lucky's Casino where she worked under the day-to-day supervision of the Location Manager. The Location Manager is responsible for all aspects of the day to day supervision of the cashier and guard employees working at the location, including hiring and termination, directing the employees, scheduling of employees, employee discipline, performance evaluations and pay raises.
Louisiana law requires that a licensed video poker casino be staffed by licensed security guards who are sponsored by a state licensed private security company. [American Guard] is a Louisiana limited liability company that is also owned by Mr. Rosbottom and was established for the business purpose of furnishing security guard personnel to Lucky's and the video poker casinos operated by other limited liability operating companies owned by Mr. Rosbottom. American Guard is a licensed private security company which serves as the sponsoring agent for security guards to obtain and maintain their individual security guard licensure. American Guard pays third party vendors for the cost of the state-mandated training for guard employees, licensure-related fees and the cost of acquiring state-mandated uniforms. American Guard also establishes the initial job duties and performance expectations for guard employees. American Guard was the sponsor for Ms. Roberson's licensure and paid third parties for the cost of her state-mandated security guard training, licensure and for the cost of her guard uniforms. American Guard does not provide security guards to any entities other than the limited liability companies owned by Mr. Rosbottom.
[Rosbottom Employees] is a Louisiana limited liability company which is also owned by Mr. Rosbottom. The business purpose of Rosbottom Employees is to handle the administrative functions associated with the employment of employees who work in the various businesses owned by Mr. Rosbottom, including video poker casino employees. Rosbottom Employees handles payroll, employee benefits, remission of employment and income tax withholding to state and federal governmental authorities, obtaining [workers'] compensation insurance and employment-related record keeping. The administrative aspects of Ms. Roberson's employment, including issuance of her paychecks, were handled by Rosbottom Employees.
The costs associated with the employment of video poker casino security guards employed at Lucky's Casino, including Ms. Roberson, were allocated between Rosbottom Employees, American Guard and Lucky's Casino by way of a system of intra-company payables and receivables. The payroll costs incurred by Rosbottom Employees are charged to American Guard, which, in turn, charged those costs, in addition to costs incurred with respect to security guard licensure, training and uniforms, to Lucky's Casino.
The answers to interrogatories also stated that neither Houma-Coteau nor American Guard had any employees that were paid directly by those companies; all employees working at the casino were paid by Rosbottom Employees.
The September 2008 affidavit testimony of Gregory Cartolano,[3] filed into the record, corroborated the information provided in the answers to interrogatories and stated as follows:
1. Affiant is a person of the age of majority and a resident of the State of Louisiana, Parish of Terrebonne.
2. Affiant is currently employed as the Director of Business Development and Operations for several businesses owned by Harold Rosbottom, Jr., including [Houma-Coteau] and [American Guard]. In such capacity affiant has personal knowledge of and is competent to testify regarding the matters stated herein.
3. Mr. Harold Rosbottom, Jr. owns a number of truck stop/restaurant/casino businesses, including a video poker casino located at 1361 Highway 182 in Houma, Louisiana doing business as Lucky's Casino. These businesses, including Lucky's Casino, are operated through commonly owned limited liability companies.
4. Lucky's Casino is operated by [Houma-Coteau], a limited liability company that is wholly owned by Mr. Rosbottom. A copy of the Louisiana Secretary of State "Detailed Record" for Houma-Coteau is attached hereto as Exhibit 1.
5. Houma-Coteau holds a video poker gaming license issued by the State of Louisiana Gaming Control Board. The gaming license issued to Houma-Coteau is attached hereto as Exhibit 2.
6. Houma-Coteau owns the building in which Lucky's Casino is located.
7. Lucky's Casino is staffed by state-licensed cashier/collector employees and unarmed security guard employees who in turn are supervised by a Casino manager.
8. The Casino Manager is employed by Houma-Coteau and is responsible for all aspects of the day-to-day supervision of the cashier and guard employees working at the video poker casino, including hiring and termination, directing the employees, scheduling of employees, employee discipline, performance evaluations and pay raises.
9. [American Guard] is a Louisiana limited liability company wholly-owned by Mr. Rosbottom that was established for the sole business purpose of furnishing licensed security guard personnel to Houma-Coteau and the other video poker casino operations owned by Mr. Rosbottom. A copy of the Louisiana Secretary of State "Detailed Record" for [American Guard] is attached hereto as Exhibit 3.
10. American Guard is a licensed private security company which serves as the sponsoring agent for casino security guard employees in obtaining and maintaining their individual security guard licensure. The license issued to American Guard by the Louisiana State Board of Private Security Examiners is attached hereto as Exhibit 4.
11. American Guard pays third party vendors for the cost of the state-mandated training for guard employees, licensure-related fees and the cost of acquiring state-mandated uniforms.
12. American Guard also provides initial instruction on the job duties of guard employees.
13. American Guard does not provide security guards to any entities other than the truck stop video poker casino facilities operated by Mr. Rosbottom's companies.
14. American Guard does not engage any guard supervisors to direct or supervise the day-to-day work activities of security guards working at the video poker casino locations.
15. [Rosbottom Employees] is a Louisiana limited liability company which is also owned by Mr. Rosbottom. A copy of the Louisiana Secretary of State "Detailed Record" for Rosbottom Employees is attached as Exhibit 5.
16. Rosbottom Employees handles employee payroll, employee benefits, payment of employment and income tax withholding to state and federal governmental authorities, obtaining [workers'] compensation insurance and employment-related record keeping.
17. A copy of the [workers'] compensation insurance policy issued by Louisiana [Workers'] Compensation Corporation ("LWCC") which was in effect at the time of the robbery incident lists Rosbottom Employees and each of the commonly-owned Rosbottom companies, including Houma-Coteau and American Guard, as insureds under the policy. Relevant excerpts from the LWCC policy are attached hereto as Exhibit 6.[4]
18. The payroll paid by Rosbottom Employees to guard employees working at Lucky's was charged to American Guard, which, in turn, charged those costs, along with the additional costs it incurred with respect to security guard licensure, training and uniforms, to Houma-Coteau.
19. Neither American Guard nor Rosbottom Employees earn a profit from Houma-Coteau for performing these functions, but instead only charge the actual costs incurred.
20. Prior to the armed robbery incident which occurred on March 3, 2006 there had never been an armed robbery at Lucky's Casino in Houma, Louisiana.
21. [Ms.] Brenda Roberson was hired to work as a security guard at Lucky's Casino on or about May 31, 2001. A copy of [Ms.] Roberson's "Employee Data Record" reflecting her hire date of May 31, 2001 is attached hereto as Exhibit 7.[5]
22. At the time of [Ms.] Roberson's hire the Houma-Coteau Casino Manager was Ms. Peggy Brunet.
23. Ms. Brunet was responsible for [Ms.] Roberson's hire, issued an at-will employment policy to Ms. Roberson and completed her state and federal income tax withholding certificates at the start of her employment.
24. On July 9, 2001 Ms. Brunet issued an "Employee Warning Notice" to [Ms.] Roberson concerning her failure to attend an employee meeting. New hire paperwork and the write up completed by Ms. Peggy Brunet are attached hereto as Exhibit 8.
25. Ms. Peggy Brunet was replaced as the Casino manager of Houma-Coteau by her sister, Ms. Heidi Brunet. Ms. Brunet issued employment-related policies to [Ms.] Roberson in April, 2003 and on May 1, 2003 completed an "Employee Status Report" increasing Ms. Roberson's hourly rate of pay.
26. On August 20, 2003, Ms. Brunet issued an "Employee Warning Notice" to [Ms.] Roberson disciplining her for sleeping on the job. Personnel file documents completed by Ms. Heidi Brunet are attached hereto as Exhibit 9.
27. Heidi Brunet was replaced by Ms. Shameeka Thomas, who was the Casino Manager of Houma-Coteau on the date of the robbery incident.
28. Ms. Thomas would have been directly responsible for the day-to-day direction, supervision, evaluation and scheduling of [Ms.] Roberson. As the Casino Manager Ms. Thomas would [have] had the power to discipline and terminate [Ms.] Roberson.
29. Ms. Thomas authorized and reported [Ms.] Roberson's use of paid vacation leave in September, 2005. An "Absent Report Form" completed by Ms. Thomas is attached hereto as Exhibit 10.
30. Documentation contained in [Ms.] Roberson's American Guard file reflects that in June, 2001 she received classroom security guard training from a licensed third party instructor and that on . . . May 28 and 29, 2002 she received instruction regarding state rules and regulations governing security guards and her guard duties at an American Guard Meeting. Ms. Roberson's guard file is attached hereto as Exhibit 11.
31. The administrative aspects of Ms. Roberson's employment, including issuance of her paychecks, payment of her payroll taxes to state and federal tax authorities, administration of her employee benefits, and maintenance of her personnel file were at all times handled by Rosbottom Employees. IRS W-2 forms issued by Rosbottom Employees to Ms. Roberson are attached hereto as Exhibit 12.
The August 11, 2008 deposition of casino employee/cashier Kellie Hebert Cantrelle is also contained in the record and further verifies that the Lucky's Casino manager Shameeka Thomas was the "boss" of those who worked at the casino, supervising the workers and setting their work schedules. Ms. Cantrell stated that three employees worked at the casino on each eight-hour shift: a cashier, a security guard, and a manager.
In opposition to the defendants' motion, the plaintiff, Phillip Roberson, submitted his own affidavit into the record, stating:
1. I am a person of the full age of majority domiciled in Terrebonne Parish, State of Louisiana.
2. Brenda B. Roberson was my mother.
3. I saw Brenda B. Roberson on a daily basis.
4. My mother, Brenda B. Roberson, a licensed guard, considered her employer to be American Guard & Security, L.L.C., and she was paid by Rosbottom Employees, L.L.C.
5. My mother, Brenda B. Roberson, received her training, instructions, and job responsibilities from American Guard & Security, L.L.C.
6. My mother, Brenda B. Roberson, was hired and fired by Rosbottom Employees, L.L.C, received her pay, vacation time, pay raises, and working guidelines from Rosbottom Employees, L.L.C.
7. My mother, Brenda B. Roberson, never considered herself an employee of Lucky's Casino or Houma-Coteau Holdings, L.L.C.
8. The foregoing is true and correct to the best of my knowledge, information and belief.
Despite the assertions in the plaintiffs affidavit, a document signed by Brenda Roberson on April 27, 2003 was filed into the record, entitled "Rosbottom Interests Confidentiality Agreement and Covenant Not to Compete," whereby she acknowledged the following, in pertinent part:
THE UNDERSIGNED Employee is or will be employed by Rosbottom Interests, L.L.C. (the "Company"), which is a holding company owning interests in several Affiliates through which it operates a variety of businesses. During the course of Employee's employment with the Company, Employee will be assigned by the Company to provide services to one or more of these Affiliates.
Thus, it is clear that Ms. Roberson was aware that her employment extended to a group of affiliated entities.
After carefully reviewing the evidence presented herein on the motion for summary judgment, we find that no genuine issue of material fact exists concerning the factual determination of whether a joint venture existed between Houma-Coteau, American Guard, and Rosbottom Employees with regard to the operation of Lucky's Casino; we conclude the trial court was correct in finding that each of these companies was a joint employer of Brenda Roberson and as such were each entitled to the benefit of the exclusivity provisions of the Louisiana Workers' Compensation Law. Accordingly, we find no error in the trial court's dismissal of the plaintiffs tort action against Houma-Coteau and American Guard on summary judgment.

CONCLUSION
For the reasons stated herein, the judgment of the trial court dismissing the defendants, Houma-Coteau Holdings, L.L.C. d/b/a Lucky's Casino and American Guard & Security, L.L.C, is affirmed. All costs of this appeal are to be borne by plaintiff/appellant, Phillip Roberson, individually and on behalf of the Estate of Brenda B. Roberson.
AFFIRMED.
WHIPPLE, J., dissenting.
In my view, this is simply not a case for summary judgment. The determination of who was plaintiffs decedent's actual and factual "employer" presents issues of fact, which cannot be resolved absent a fact-finder weighing the evidence, and making factual findings.
Accordingly, I respectfully dissent.
NOTES
[1] American Guard was improperly named in the plaintiffs petition as "American Guard Security Company."
[2] Rosbottom Employees was not made a defendant in this lawsuit.
[3] The July 17, 2008 deposition of Mr. Cartolano was also filed into the record and supports the statements made in this subsequent affidavit.
[4] This document is entitled "General Endorsement" and identifies the insurer as "Louisiana Workers' Compensation Corporation" and the insured as "Rosbottom Employees, LLC." The endorsement states: "The following named businesses are included in policy coverage: . . . American Guard . . . Houma Coteau ...."
[5] Exhibit 7 includes a document entitled "Rosbottom Employees LLC Employee Data Record," which is a form filled out by Ms. Roberson as a "new employee," having a "New Hire" date of May 31, 2001, and naming the location of her employment as "Lucky's Houma Hwy # 182;" her position was listed as "Security Guard." Also included within Exhibit 7 is a 2001 W-4 signed by Ms. Roberson, listing her employer as "Lucky's Casino." Further, there is appended an "Employee Withholding Exemption Certificate" signed by Ms. Roberson and by Peggy Brunet. Also attached is a "Rosbottom Employees LLC At-Will Employment Policy" signed by Ms. Roberson and Ms. Brunet.